FILED

2023 Aug-07  PM 12:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JEFFERY DAY RIEBER,** | ] | |
| | ] | |
| **Petitioner,** | ] | |
| | ] | |
| **v.** | ] | **5:18-cv-00337-ACA** |
| | ] | |
| **JOHN HAMM, Commissioner of the** | ] | |
| **Alabama Department of Corrections,** [1] | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION AND ORDER

In 1990, Petitioner Jeffery Day Rieber murdered Glenda Phillips Craig, a convenience store clerk, in the course of robbing the convenience store of $506. An Alabama jury convicted Mr. Rieber of capital murder and recommended, by a seven to five vote, that the state court sentence him to life imprisonment without the possibility of parole. The state court overrode that recommendation and sentenced him to death. Mr. Rieber petitions for a writ of habeas corpus under 28 U.S.C. § 2254, asserting that his trial and appellate counsel were ineffective, the judicial override of the jury's recommendation invalidates his sentence, Alabama's capital sentencing scheme is unconstitutionally vague and arbitrary, Alabama's methods of

---

[1] When Mr. Rieber filed this petition, he named then-Commissioner of the Alabama Department of Corrections Jefferson Dunn. (Doc. 1 at 1). The Commissioner is now John Hamm. Under Federal Rule of Civil Procedure 25(d), the court substitutes Mr. Hamm for Mr. Dunn.

execution involve a substantial and unreasonable risk he will suffer unnecessary and prolonged pain, the State violated his constitutional rights by limiting the fee for court-appointed trial counsel, and the State permitted the spoliation of exculpatory evidence. (Doc. 1).

One of Mr. Rieber's claims—Claim Nine, a challenge to Alabama's method of execution—is not properly brought in a habeas petition, so the court **WILL DISMISS** that claim **WITHOUT PREJUDICE** to refiling under 42 U.S.C. § 1983. The rest of Mr. Rieber's claims are either meritless or procedurally defaulted, so the court **WILL DENY** his § 2254 petition and **WILL DENY** him a certificate of appealability. The court also **DENIES** his requests for discovery and an evidentiary hearing.

## I.   BACKGROUND

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The court therefore draws its description of the facts from the state courts' findings.

1.      The Crime

Just before 8:00 P.M. on October 9, 1990, Mr. Rieber entered the convenience store where Ms. Craig worked. (Doc. 16-93 at 98); *see also Rieber v. State*, 663 So. 2d 985, 987 (Ala. Crim. App. 1994) ("*Rieber I*"). A surveillance camera captured him approaching the counter, where he withdrew a .22 caliber revolver and shot Ms. Craig, piercing her wrist and the back of her head. (Doc. 16-93 at 98). He took the contents of the cash register, which amounted to $506, then leaned over the counter so that he could see Ms. Craig, shot her in the head a second time, and fled. (Doc. 16-93 at 98); *Rieber I*, 663 So. 2d at 988. Several minutes later, another customer entered the store. (Doc. 16-93 at 98–99). She found Ms. Craig, still alive but choking on her own blood. (*Id.*); *Ex parte Rieber*, 663 So. 2d 999, 1004 (Ala. 1995) ("*Rieber II*"). Ms. Craig died at the hospital soon after, widowing her husband and orphaning her two children from a previous marriage. (Doc. 16-93 at 99); *Rieber II*, 663 So. 2d at 1005; *Rieber I*, 663 So. 2d at 987.

At trial, the State presented evidence that, about a week before the murder, Mr. Rieber purchased a .22 caliber revolver. (Doc. 16-93 at 97). A few days before the murder, Tommy Erskine saw Mr. Rieber sitting in a car outside the convenience store. *Rieber I*, 663 So. 2d at 987. Mr. Erskine testified that when he spoke to Ms. Craig, she seemed "very nervous and afraid," and he suggested that she call the

police. *Id.* After Mr. Erskine left, he became uneasy and went back to the store, where he saw Mr. Rieber drive by. *Id.*; (*see also* doc. 16-93 at 97). He went into the store and told Ms. Craig to call the police because Mr. Rieber "was patrolling the store." *Rieber I*, 663 So. 2d at 987. In addition, Allen Wayne Gentle, who had gone to high school with Mr. Rieber, saw Mr. Rieber in the store about three hours before the murder. *Id.* Ms. Craig asked Mr. Gentle several questions, in response to which he identified Mr. Rieber and said, "I don't think he would do nothing like that." *Id.*

Shortly after the murder, Mr. Gentle identified Mr. Rieber on the surveillance video. *Rieber I*, 663 So. 2d at 987. Several hours after the murder, the police arrested Mr. Rieber and searched his house and car. *Id.* at 987–88. In Mr. Rieber's room, they found clothing similar to the clothes worn by the gunman and $292 in cash, and in his car, they found a .22 caliber revolver with two spent rounds. *Id.* at 988. During questioning, Mr. Rieber denied involvement in the murder. *Id.*

2.     <u>Trial Proceedings</u>

A jury found Mr. Rieber guilty of murder during a first degree robbery, a capital offense. (Doc. 16-85 at 161); *see* Ala. Code § 13A-5-40(a)(2) (1987). Under the statute in effect at the time, a finding of guilt on a capital offense triggered a penalty hearing, after which the jury would issue a sentencing recommendation. Ala Code §§ 13A-5-43(d), 13A-5-45 (1981). At the penalty hearing, trial counsel

presented evidence that Mr. Rieber had a good reputation in the community. (Doc. 16-78 at 59–100). Trial counsel also submitted a psychiatric report about Mr. Rieber's mental state at the time of the offense. (*Id.* at 100; Doc. 16-79 at 3; Doc. 16-86 at 128).

In the report, Dr. Kathy Rogers found no evidence of any major psychiatric disorder but noted a significant self-reported history of drug and alcohol abuse beginning at a young age. (Doc. 16-86 at 129–30). Dr. Rogers noted that Mr. Rieber was able to describe, "at length and in detail, his behavior leading up to" the offense, although he denied any memory of "a couple of hours during the actual offense." (*Id.* at 130). Dr. Rogers opined that "a reported lack of memory for that period would have been related to substance abuse or deliberate misrepresentation of [Mr. Rieber's] memory, although the former is more likely in my opinion." (*Id.* at 131; *see also id.* at 133 (addendum to the original report)). In an addendum to the report, Dr. Rogers stated that Mr. Rieber had reported that, on the night of the murder, he drank six or seven beers, smoked six joints, and took three hits of acid. (*Id.* at 135). She further stated that Mr. Rieber had denied having blackouts when using acid, but had occasionally suffered blackouts from alcohol, and "the combination of substances and the possibility that the 'acid' which he used caused an idiosyncratic reaction, such that he experienced a blackout, is not untenable." (*Id.* at 135).

Trial counsel argued to the jury that Mr. Rieber had a reputation in the community for being kind, gentle, helpful, trustworthy, and nonviolent; that he did not have any significant criminal history; and that the drugs he had consumed caused "an aberration completely different to anything that has ever occurred in this man's life." (Doc. 16-79 at 24–26). The jury recommended, seven to five, that the court impose a sentence of life imprisonment without parole. (Doc. 16-85 at 162).

But under the law in effect at the time, the jury's recommendation was "not binding upon the court." Ala. Code § 13A-5-47(e) (1981). Instead, the trial court was required to hold another hearing, where it considered the evidence presented at trial, during the penalty hearing, and in a pre-sentence investigation report, along with arguments by the parties about "the existence of aggravating and mitigating circumstances and the proper sentence to be imposed in the case." *Id.* § 13A-5-47(c)–(d). In deciding the sentence, the trial court had to enter specific written findings about the factors and determine "whether the aggravating circumstances it [found] to exist outweigh[ed] the mitigating circumstances it [found] to exist." *Id.* § 13A-5-47(d)–(e).

At the sentencing hearing before the court, trial counsel called Mr. Rieber's mother, who testified about Mr. Rieber's gentle nature and limited criminal history. (Doc. 16-79 at 54–60). The State argued that the commission of the murder in the

6

course of a first degree robbery was alone enough to warrant the death penalty, but that in addition the murder was especially heinous, atrocious, and cruel. (*Id.* at 71–72). In response, trial counsel argued that the murder was not especially heinous, atrocious, or cruel compared to other capital offenses; attempted to distinguish the cases the State had cited in support of that aggravating circumstance; and argued that Mr. Rieber had a limited criminal history, no history of violence, no memory of the offense because of his drug use, that he had shown improvement and helpfulness in prison, and that the court should weigh heavily the jury's recommendation of a life sentence. (*Id.* at 73–86).

The state trial court found two aggravating circumstances: first, that Mr. Rieber committed the murder while engaged in the commission of a first degree robbery and second, that this offense was especially heinous, atrocious, or cruel compared to other capital offenses. (Doc. 16-62 at 93–95). The court based its factual finding about the first aggravating circumstance on the jury's verdict. (*Id.* at 93). In support of the second aggravating circumstance, the court explained that Ms. Craig had been "completely defenseless and posed no threat" to Mr. Rieber; Mr. Rieber had "stalked the victim for several days before the murder," causing her fear; Mr. Rieber planned the crime in advance; Mr. Rieber intended to kill Ms. Craig; Ms. Craig suffered pain; and the murder was "a conscienceless and pitiless killing performed for no reason

7

whatsoever . . . perpetrated under circumstances which caused fear and pain to the victim." (*Id.* at 93–95).

The state trial court also found two mitigating circumstances: first, that Mr. Rieber had no significant criminal history and second, that Mr. Rieber had a good reputation and good character before the offense. (*Id.* at 96–99). The court expressly considered and rejected Dr. Rogers' conclusion that Mr. Rieber's reported memory lapse was due to substance abuse because "there is no evidence before the Court that the defendant was under the influence of drugs and alcohol at the time of the offense." (*Id.* at 97–98). After weighing the aggravating and mitigating circumstances and the jury's recommendation of a life sentence, the court overrode the jury's recommendation and imposed a death sentence. (*Id.* at 100).

Mr. Rieber moved for a new trial on various grounds, including that his own attorney violated *Batson v. Kentucky*, 476 U.S. 79, 88 (1986) by using a peremptory strike for an Asian American juror because he believed Asian American jurors had "a tendency to be more law-and-order oriented and less apt to give a Defendant the benefit of the doubt." (Doc. 16-85 at 184–85, 188; doc. 16-79 at 95, 99–102). At a hearing on the motion for a new trial, counsel challenged the court's rejection of Dr. Rogers' report. (Doc. 16-79 at 109–10). When the court asked whether any evidence supported the allegation that Mr. Rieber had consumed alcohol or drugs

before entering the store, counsel admitted the only evidence on that point was Dr. Rogers' report. (*Id.* at 110–11). The state trial court denied the motion for a new trial. (Doc. 16-85 at 190).

### 3. Direct Appeal

Mr. Rieber appealed his conviction and sentence and the Alabama Court of Criminal Appeals affirmed in a reasoned opinion. *Rieber I*, 663 So. 2d at 998. The Alabama Supreme Court granted certiorari and affirmed, also in a reasoned opinion. *Rieber II*, 663 So. 2d at 1015. The United States Supreme Court denied Mr. Rieber's petition for a writ of certiorari. *Rieber v. Alabama*, 516 U.S. 995 (1995).

### 4. Postconviction Proceedings

After the conclusion of his direct appeal, Mr. Rieber, proceeding *pro se*, filed in state court an Alabama Rule of Criminal Procedure 32 petition asserting various challenges to his conviction and sentence. (Doc. 16-6 at 19–55). He later filed a counseled amended Rule 32 petition. (Doc. 16-11 at 41–66). The state habeas trial court held a three-day evidentiary hearing on the amended Rule 32 petition. (Doc. 16-82 at 49–202; doc. 16-83; doc. 16-84 at 3–35).

Habeas counsel called fourteen witnesses, ten of whom testified about Mr. Rieber's history of substance abuse and one of whom testified that she was aware Mr. Rieber had sold drugs. (Doc. 16-31 at 38–47). One witness—Charity

Hubert—testified that she saw Mr. Rieber in a house where drugs were being used on the day of the murder. (*Id.* at 41). Ms. Hubert also testified that she entered a relationship with Mr. Rieber when she was fourteen and he was nineteen and that she had begun using hard drugs within a year of dating him. (*Id.*). Another witness testified that she had seen Mr. Rieber smoke marijuana and drink at a party on the day of the murder. (*Id.* at 45). Two other witnesses testified to seeing Mr. Rieber at the party but could not remember if they had seen him doing drugs. (*Id.* at 46–47).

One of Mr. Rieber's trial counsel also testified at the Rule 32 evidentiary hearing.[2] (*See* doc. 16-31 at 42–44). Trial counsel testified that he believed Mr. Rieber would be convicted and he negotiated a plea agreement for a life sentence, but Mr. Rieber rejected the plea deal on his mother's advice. (*Id.* at 42). Trial counsel stated that he had briefly considered a voluntary intoxication defense, but ultimately decided to proceed on a mistaken identity defense after consulting with Mr. Rieber, who never suggested any other strategy to him. (*Id.* at 43–44).

The state habeas trial court denied the amended Rule 32 petition in part as procedurally barred and in part on the merits. (Doc. 16-31 at 34–68; doc. 16-32 at 1–41). On appeal, the Alabama Court of Criminal Appeals affirmed the denial of the

---

[2] Mr. Rieber's other trial attorney, who had worked on the penalty phase part of his trial, died before the state habeas evidentiary hearing. (Doc. 16-31 at 42 n.2).

Rule 32 petition. (Doc. 16-93 at 96–141). The Alabama Supreme Court denied a

petition for writ of certiorari without an opinion. (Doc. 16-98 at 31).

Mr. Rieber then filed his § 2254 petition. (Doc. 1). He asserts the following

claims:[3]

(1)  Trial counsel was ineffective for failing to "fully pursue" evidence of
     voluntary intoxication, which would have supported a jury instruction on
     the lesser included offense of manslaughter;

(2)  Trial counsel was ineffective for failing to research and present to the
     sentencing court caselaw that would have established the arbitrary and
     capricious nature of imposing a death sentence in this case;

(3)  Trial counsel was ineffective for failing to investigate and present to the
     sentencing court evidence corroborating Mr. Rieber's extreme
     intoxication at the time of the murder;

(4)  Appellate counsel was ineffective for failing to challenge the sentencing
     court's finding that Mr. Rieber had stalked the victim before murdering
     her;

(5)  Appellate counsel was ineffective for failing to raise six constitutional
     challenges to Alabama's sentencing scheme;

_____

[3] Mr. Rieber's § 2254 petition appears to raise an additional two claims: one that appellate counsel was ineffective for raising a frivolous issue on appeal (doc. 1 at 24), and one that Alabama's capital sentencing scheme was unconstitutionally arbitrary because elected judges are likely to override a jury's recommendation of life (*id.* at 36). In his reply brief, Mr. Rieber states that neither of these are freestanding claims; they are instead arguments in support of his claims about appellate counsel's ineffectiveness and the statute's constitutionality. (Doc. 17 at 14 ("Mr. Rieber did not make [a] claim [that appellate counsel were ineffective for raising a frivolous *Batson* issue]. . . . [He] has not argued . . . that by itself counsels' raising the issue violated *Strickland*."); *id.* at 19 ("The State also characterizes as a new claim Mr. Rieber's argument that elected judges are more likely to override life-without-parole recommendations in favor of death. This is not a separate claim, though, but rather an argument . . . . demonstrating that Alabama's death penalty scheme is unmoored to any rational framework for consistent application.") (citation omitted)). Given this concession, the court will not treat those two arguments as freestanding claims but will instead address them in the context of the claims in which they are asserted.

11

(6)  Under *Hurst v. Florida*, 136 S. Ct. 616 (2016), Alabama's judicial override provision was unconstitutional, made his sentence arbitrary and capricious, and violated his right to equal protection;

(7)  Alabama's statute setting out the factors that make a crime death-eligible is unconstitutionally vague;

(8)  Alabama's death penalty statute is unconstitutionally arbitrary;

(9)  Alabama's methods of execution involve a substantial and unreasonable risk that he will suffer unnecessary and prolonged pain;

(10) Alabama's then-applicable $1,000 limit on the fees a court-appointed attorney may be paid in a death penalty case is unconstitutional; and

(11) the State spoliated exculpatory evidence by keeping Mr. Rieber in custody after his arrest without appointing an attorney or conducting blood and urine tests.

(Doc. 1 at 4–44).

## II.   DISCUSSION

The State challenges each of Mr. Rieber's claims, some of them on the merits and some of them as procedurally defaulted. (Doc. 14). The court will first discuss the claims that the State challenges on the merits before moving on to the claims challenged as procedurally defaulted.

### 1.   Merits

Because Mr. Rieber filed his § 2254 petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this action. *Guzman v. Sec'y, Fla. Dep't of Corr.*, 663 F.3d 1336, 1345 (11th Cir. 2011). Under AEDPA, where a state court has adjudicated a habeas claim on the merits, a federal

court may not grant relief except in highly limited circumstances. *See* 28 U.S.C. § 2254(d).

First, the court may grant habeas relief if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "Contrary to" federal law means the state court reached "a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . the state court decide[d] a case differently than [the] Court . . . on a set of materially indistinguishable facts." *Id.* at 412–13. "Unreasonable application of" federal law means the state court correctly identified "the governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. Section 2254(d)(1) sets "a highly deferential standard that is intentionally difficult to meet." *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1348 (11th Cir. 2019). A petitioner cannot satisfy the standard merely by showing that the state court reached the wrong result; he must establish that the state court's ruling "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017).

Alternatively, a federal court may grant habeas relief if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Again, the petitioner cannot satisfy § 2254(d)(2) by persuading the federal court that the state court's factual finding was wrong. *See Wood v. Allen*, 558 U.S. 290, 301 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."). Instead, the petitioner must establish that the evidence is "too powerful to conclude anything but the petitioner's factual claim" or that "the state court's finding was clearly erroneous." *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (alteration and quotation marks omitted). Moreover, § 2254 requires the court to presume the correctness of any factual findings by the state court, with the petitioner bearing the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

But satisfying either § 2254(d)(1) and (d)(2) does not automatically entitle a petitioner to habeas relief. Instead, if a petitioner establishes that a state court's decision is not entitled to deference under § 2254(d), the court reviews the claim *de*

*novo. Madison v. Comm'r, Ala. Dep't of Corr.*, 761 F.3d 1240, 1243–44 (11th Cir. 2014).

>    *a. Claim One*

Mr. Rieber asserts that trial counsel was ineffective for failing to "fully pursue" evidence of voluntary intoxication, which would have supported a jury instruction for the lesser included offense of manslaughter. (Doc. 1 at 4–11). He contends that despite the strong evidence of his guilt, trial counsel elected to present a meritless alibi defense. (*Id.* at 4–6). But, according to Mr. Rieber, once Dr. Rogers submitted her report indicating that he had consumed drugs and alcohol and did not remember the murder, trial counsel should have investigated the viability of a voluntary intoxication defense. (*Id.* at 6–11).

To prevail on a claim of ineffective assistance of trial counsel, a petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient only if it "fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance." *Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (quotation marks omitted). A petitioner can establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1148 (11th Cir. 2017) (quotation marks omitted).

At trial, defense counsel argued to the jury that the State's evidence was insufficient to prove beyond a reasonable doubt that the convenience store video and witnesses showed Mr. Rieber committing the murder. (Doc. 16-73 at 48–52; doc. 16-77 at 81–96). He cross-examined the State's witnesses about various aspects of the State's evidence (doc. 16-74 at 16–18, 29–37, 48–63; doc. 16-76 at 17–23, 71–82, 87–90, 99–100), and called defense witnesses to cast doubt on the identification of Mr. Rieber as the man who had visited the convenience store several hours before the murder or the man who appeared in the surveillance video (doc. 16-77 at 9–12, 21–26, 31–37).

At the Rule 32 evidentiary hearing, Mr. Rieber called witnesses who testified about Mr. Rieber's history of drug use as well as his drug use on the day of the murder. (Doc. 16-31 at 38–41, 45–48). Several of them also testified that, before trial, they briefly spoke with trial counsel about Mr. Rieber's drug use. (*Id.* at 38–39; doc. 16-82 at 102–03, 124–25, 142–43). In addition, trial counsel testified about his investigation and strategy in defending Mr. Rieber. (Doc. 16-31 at 43–44; doc. 16-82 at 200–02; doc. 16-83 at 3–52).

16

Specifically, trial counsel testified that the State's evidence was so strong that he was confident Mr. Rieber would be convicted, so he immediately negotiated a plea agreement that would have removed the death penalty from the case, but Mr. Rieber rejected the plea deal. (Doc. 16-83 at 9–10). Trial counsel then discussed a mistaken identity defense with Mr. Rieber, who seemed to understand the strategy, did not suggest any other defense, and never mentioned blacking out or being unable to remember what had happened at the convenience store. (*Id.* at 38–39, 44–45).

Trial counsel testified that he read Dr. Rogers' report before trial. (Doc. 16-83 at 13). He knew that for crimes involving specific intent, "sometimes intoxication or dependency on drugs can be used to negate intent. But . . . I can't say for sure." (*Id.* at 32–33). He briefly considered a voluntary intoxication defense, but not for long because "it didn't matter, because our position was he didn't do it." (*Id.* at 33; *see also id.* at 13–14 (explaining that Dr. Rogers' statements about Mr. Rieber's drug use did not change the trial strategy because "our position was it wasn't him that did the shooting, so it didn't make any difference what his mental state was. He was not the one who did the shooting.")).

Mr. Rieber raised this ineffective assistance claim in his counseled Rule 32 petition. (Doc. 16-11 at 60 ¶¶ 62–63, 61 ¶¶ 70–71). After the state trial habeas court rejected this claim of ineffective assistance on the merits (doc. 16-32 at 5–8), the

17

Alabama Court of Criminal Appeals affirmed (doc. 16-93 at 109–12). The Court of Criminal Appeals concluded that trial counsel made a reasonable strategic decision to focus on the mistaken identity defense and that the evidence presented at the evidentiary hearing would not have entitled Mr. Rieber to a lesser-included-offense manslaughter instruction based on voluntary intoxication. (Doc. 16-93 at 107–12). Because the state court rejected this claim on the merits, this court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

Mr. Rieber cannot establish that the state court's rejection of this ineffective assistance claim was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d). With respect to the deficient performance prong, the Alabama Court of Criminal Appeals (and the state habeas trial court) found as a fact, based on the evidence presented at the evidentiary hearing, that trial counsel made a strategic decision to focus on the mistaken identity defense instead of the voluntary intoxication defense. (Doc. 16-93 at 112; *see* doc. 16-32 at 7–8). That factual finding is entitled to deference under § 2254(d)(2). *See Wood v. Allen*, 558 U.S. 290, 300–02 (2010). Mr. Rieber does not argue that this factual finding was unreasonable or that he could present clear and convincing evidence rebutting the presumption of correctness. (*See* doc. 1 at 4–10; doc. 17 at 5–

18

8); *see* 28 U.S.C. § 2254(d). The court is therefore bound by the state court's finding that trial counsel made a strategic decision about which defense to pursue.

However, "[w]hether the state court reasonably determined that there was a strategic decision under § 2254(d)(2) is a different question from whether the strategic decision itself was a reasonable exercise of professional judgment under *Strickland* or whether the application of *Strickland* was reasonable under § 2254(d)(1)." *Wood*, 558 U.S. at 304. Mr. Rieber contends that the state courts unreasonably applied *Strickland* by finding trial counsel's strategic decision to be a reasonable exercise of professional judgment. (Doc. 17 at 7–8).

There is no dispute that trial counsel did not investigate the voluntary intoxication defense beyond reading Dr. Rogers' report and briefly discussing Mr. Rieber's drug use with some of his family members. (Doc. 16-82 at 102–03, 124–25, 142–43; doc. 16-83 at 13–14). The question therefore is whether the Alabama Court of Criminal Appeals reasonably found that level of investigation to be reasonable. *See Wood*, 558 U.S. at 304

In *Strickland*, the Supreme Court wrote that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Indeed, "counsel need not always investigate before pursuing or not pursuing a

19

line of defense." *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) (en banc). "[T]o be effective a lawyer is not required to pursue every path until it bears fruit or until all hope withers," and "a decision to limit investigation is accorded a strong presumption of reasonableness." *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (quotation marks and alteration omitted). Counsel's duty is to "make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This correct approach toward investigation reflects the reality that lawyers do not enjoy the benefit of endless time, energy or financial resources." *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994).

The Alabama Court's of Criminal Appeals' decision was eminently reasonable in light of federal authority on counsel's duty to investigate. The evidence presented at the Rule 32 evidentiary hearing establishes that trial counsel consulted with Mr. Rieber in deciding the defense to present at trial. (Doc. 16-83 at 44–45). The only indication that Mr. Rieber had blacked out was contained in Dr. Rogers' report. (*See* doc. 16-79 at 110–11). Mr. Rieber never told his attorney that he had blacked out, nor did he suggest any defense other than mistaken identity. (*Id.* at 38–39, 44–45); *see Chandler*, 218 F.3d at 1318 ("Because the reasonableness of counsel's acts (including what investigations are reasonable) depends critically upon information supplied by the petitioner or the petitioner's own statements or actions,

evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims.") (alteration and quotation marks omitted). And a voluntary intoxication defense would have been inconsistent with the mistaken identity defense. (Doc. 16-83 at 13–14, 32–33); *see Chandler*, 218 F.3d at 1318 ("[C]ounsel's reliance on particular lines of defense to the exclusion of others—whether or not he investigated those other defenses—is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable.").

Moreover, the Alabama Court of Criminal Appeals held in this case that "the evidence Rieber offered at the Rule 32 hearing in support of a voluntary-intoxication theory did not establish that he would have been entitled to a lesser-included-offense manslaughter instruction." (Doc. 16-93 at 112). This is a state court's interpretation of state law, which is binding on this court. *See Pietri v. Sec'y, Fla. Dep't of Corr.*, 641 F.3d 1276, 1284 (11th Cir. 2011). And an attorney does not perform deficiently by failing to present a meritless defense. *Lindsey v. Smith*, 820 F.2d 1137, 1152 (11th Cir. 1987) ("A habeas petitioner who proposes alternative trial strategy that would itself have proved futile has failed to demonstrate that the representation at trial fell below an objective standard of reasonableness."). Accordingly, Mr. Rieber cannot establish that the state court unreasonably concluded that he failed to establish

21

deficient performance with respect to the investigation and presentation of a voluntary intoxication defense.

The same reasoning applies to any argument that counsel's performance prejudiced Mr. Rieber's defense. Even if trial counsel had investigated and presented to the jury all of the evidence Mr. Rieber presented during his Rule 32 evidentiary hearing, the state trial court would not have given the manslaughter instruction and there is no possibility the outcome of Mr. Rieber's trial would have changed. (Doc. 16-93 at 112); *Pietri*, 641 F.3d at 1284. Mr. Rieber therefore cannot establish that the state court's prejudice finding was contrary to, or an unreasonable application of, clearly established federal law.

### b. Claim Three

Mr. Rieber contends that trial counsel was ineffective for failing to investigate and present to the sentencing court evidence corroborating his extreme intoxication at the time of the murder. (Doc. 1 at 14–18). He argues that because the State "fiercely attacked" Dr. Rogers' statements about Mr. Rieber's drug use during the penalty phase hearing before the jury, trial counsel should have known that he needed to present corroborating evidence to the trial court before the imposition of the sentence. (*Id.* at 14–17; doc. 17 at 8–11).

22

The standard for a claim of ineffective assistance of counsel at the sentencing phase of a capital trial is the same as at the guilt phase: the petitioner must establish both deficient performance and prejudice. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). With respect to the prejudice prong specifically, "where, as here, a petitioner challenges a death sentence, the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Putman v. Head*, 268 F.3d 1223, 1248 (11th Cir. 2001) (quotation marks and alteration omitted). The court must assess the prejudice prong by "reweigh[ing] the evidence in aggravation against the totality of available mitigating evidence" and "presum[ing] a reasonable sentencer." *Boyd v. Allen*, 592 F.3d 1274, 1295 (11th Cir. 2010).

During the penalty phase before the jury, trial counsel called seven witnesses who testified about Mr. Rieber's "good character, his gentle nature, his lack of violence, and his willingness to help others." (Doc. 16-32 at 27). Counsel also admitted Dr. Rogers' report, which recited Mr. Rieber's statements about his history of drug use and his inability to remember the crime. (*Id.* at 27–28). The jury ultimately recommended life imprisonment by a seven-to-five vote. (Doc. 16-85 at 162).

23

At the sentencing hearing before the judge, Mr. Rieber's mother testified that Mr. Rieber was a kind, gentle, and non-violent person who had helped take care of her and her home. (Doc. 16-79 at 54–60). The State asked the judge to override the jury's recommendation of life because the crime was especially heinous, atrocious, or cruel and the murder was committed in the course of a first degree robbery. (*Id.* at 60–72). Trial counsel argued that the evidence did not support the heinous, atrocious, or cruel aggravating circumstance and the cases on which the State had relied in support of that circumstance were distinguishable; that Mr. Rieber had no significant history of prior criminal activity and had a reputation for good character and helpfulness; that Dr. Roger's report showed Mr. Rieber was unable to appreciate the criminality of his conduct because of the drugs and alcohol he had consumed; and that the court should weigh heavily the jury's advisory verdict. (*Id.* at 73–86).

In the state trial court's sentencing order, the court described the facts of the crime and made factual findings about aggravating and mitigating circumstances. (Doc. 16-62 at 89–99). Among other things, the court described Dr. Rogers' report, and specifically Mr. Rieber's allegation to Dr. Rogers that he could not remember the murder, as well as Dr. Rogers' conclusion that the reason for the memory lapse was more likely substance abuse than deliberate misrepresentation. (Doc. 16-62 at 97). The state trial court rejected that conclusion because of the lack of evidence that

Mr. Rieber "was under the influence of drugs and alcohol at the time of the offense." (*Id.* at 98). At the hearing on Mr. Rieber's motion for a new trial, counsel conceded that Dr. Rogers' report was the only evidence about Mr. Rieber's substance abuse on the day of the murder or his history of substance abuse. (Doc. 16-79 at 111).

At the Rule 32 evidentiary hearing, Mr. Rieber called witnesses who testified about Mr. Rieber's long history of drug use as well as people who saw him at a party using drugs the day of the murder, although none could testify about exactly what drugs he used at what time or how intoxicated he was. (Doc. 16-31 at 39–41, 45–47). Mr. Rieber's sister testified that Mr. Rieber had sold acid in the past. (Doc. 16-82 at 104). And Charity Hubert testified that she began dating Mr. Rieber when she was fourteen and he was nineteen, after which she began doing cocaine, acid, and meth with him. (Doc. 16-31 at 41; *see* doc. 16-82 at 173–76, 189).

Mr. Rieber raised his ineffective assistance claim in his counseled Rule 32 petition. (Doc. 16-11 at 62–63 ¶ 76). The state habeas trial court rejected the claim on the grounds that the evidence presented at the evidentiary hearing would not have convinced the sentencing court to follow the jury's recommendation, especially because it included evidence that was not mitigating, such as his history of selling drugs and providing drugs to a teenage girl with whom he was in a sexual relationship. (Doc. 16-32 at 30–31). Acknowledging that this claim was governed

by the United States Supreme Court's decision in *Wiggins*, the Alabama Court of Criminal Appeals expressly adopted the state habeas trial court's findings and added that trial counsel had "introduced as much mitigating evidence concerning Rieber's background as was available to him." (Doc. 16-93 at 114–17). Because that was a ruling on the merits, the court must afford § 2254(d) deference to the state courts' factual findings and application of *Wiggins*.

In *Wiggins*, trial counsel's investigation into the petitioner's life history consisted of acquiring records about the petitioner's placements in foster care and reading "a one-page account of [his] 'personal history noting his 'misery as a youth,' quoting his description of his own background as 'disgusting,' and observing that he spent most of his life in foster care." 539 U.S. at 523. Although "standard practice in Maryland in capital cases at the time of [his] trial included the preparation of a social history report," counsel did no further investigation into the petitioner's background. *Id.* at 524. Had counsel investigated, they would have found that the petitioner suffered severe physical and sexual abuse at the hands of his mother, multiple foster parents, foster siblings, and one employer, starting before he was six years old. *Id.* at 516–17. Instead of presenting any evidence about the petitioner's traumatic childhood to the sentencer, trial counsel attempted to re-try his

26

responsibility for the murder and informed the jury only that the petitioner had no prior convictions. *Id.* at 515, 537.

The United States Supreme Court held that the state court's rejection of the petitioner's ineffective assistance claim was unreasonable. *Wiggins*, 539 U.S. at 527–38. The Court determined that the state court's decision on the deficient performance prong was based on an unreasonable factual finding about what evidence counsel had available and an unreasonable assumption that counsel decided not to investigate for strategic reasons. *Id.* at 523–29, 534. The Court, applying a *de novo* standard of review because the state courts had not reached the prejudice prong, then found that the petitioner had established prejudice because the mitigating evidence of childhood abuse was "powerful," the mitigating evidence was not inconsistent with the sentencing strategy of challenging the petitioner's responsibility for the crime, the jury heard very little other mitigating evidence, and the State presented only weak aggravating evidence. *Id.* at 534–38.

This court need address only the prejudice prong of this claim. *See Boyd*, 592 F.3d at 1293 ("[A] court may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied."). In this case, the state habeas courts found that Mr. Rieber failed to establish prejudice because the evidence he presented at the Rule 32 hearing would

27

still not have convinced the sentencing court to impose a life sentence. (Doc. 16-32 at 30–31; doc. 16-93 at 117). Mr. Rieber contends that this conclusion was unreasonable because the evidence proved that he was in the habit of consuming hard drugs and that he consumed hard drugs on the day of the murder. (Doc. 1 at 15–16; doc. 17 at 10).

The evidence presented at the Rule 32 evidentiary hearing corroborates the part of Dr. Rogers' report reciting Mr. Rieber's history of drug use. (*See* doc. 16-32 at 38–41, 45–47). The evidence also corroborates Mr. Rieber's claim that he consumed hard drugs and alcohol on the day of the murder. (*See id.*). But it does not corroborate Mr. Rieber's claim that he was intoxicated at the time of the murder. The evidence that Mr. Rieber used drugs on the day of the murder was limited to evidence that Mr. Rieber attended a party where drugs were being used, one witness saw him snorting meth, smoking marijuana, and drinking alcohol at an unspecified time, and one witness *might* have seen him smoking marijuana and drinking around 6:30 or 7 P.M. (*Id.* at 45–47; doc. 16-83 at 67–68, 74–75, 77, 96). Multiple witnesses testified that they had never seen Mr. Rieber black out from drug use. (Doc. 16-31 at 40, 46; doc. 16-82 at 172; doc. 16-83 at 70–71). And Mr. Rieber's sister testified that she was familiar with how Mr. Rieber acted when he was high and that when she saw him about an hour after the murder, he did not appear to be intoxicated.

(Doc. 16-32 at 40; doc. 16-82 at 144–46). It was not unreasonable for the state court

to find as a fact that this evidence failed to establish that Mr. Rieber was intoxicated

when he committed the murder. *See Landers*, 776 F.3d at 1294 (explaining that a

factual finding is unreasonable under § 2254(d)(2) if the evidence is "too powerful

to conclude anything but the petitioner's factual claim" or that "the state court's

finding was clearly erroneous").

Under *Wiggins*—a case that addressed the prejudice prong *de novo*—the

question is whether, balanced against the aggravating evidence, the omitted

mitigating evidence would have influenced the sentencer's assessment of the

defendant's moral culpability. *See* 539 U.S. at 535. In that case, the only mitigating

evidence presented to the jury was that the petitioner had no prior convictions and

the aggravating evidence was weak. *Id.* at 537–38. The omitted mitigating evidence

was that the petitioner was severely physically and sexually abused from an

extremely young age. *Id.* at 516–17. Similar evidence was omitted in other cases in

which federal courts have found an unreasonable application of *Wiggins* based on a

failure to investigate and present mitigating evidence. *See Williams v. Allen*, 542

F.3d 1326, 1342–43 (11th Cir. 2008) (finding prejudice based on mitigating

evidence that as a child, the petitioner was repeatedly severely beaten with deadly

weapons, deprived of food and clothing, and did not receive care relating to basic hygiene and medical needs).

By contrast, the mitigating evidence that trial counsel did not present to Mr. Rieber's sentencing court is weak: it consisted of evidence that Mr. Rieber had a history of using hard drugs and alcohol and that he used some drugs and alcohol on the day he murdered Ms. Craig. (Doc. 16-32 at 38–41, 45–47). Trial counsel did present evidence that Mr. Rieber had a reputation for good character and had no history of violence and that a jury had, by majority vote, recommended a life sentence. (Doc. 16-32 at 27; doc. 16-79 at 54–60).

But the aggravators were strong. The state court found that—in addition to committing the murder during a robbery—Mr. Rieber planned the crime in advance with the intent to kill Ms. Craig and killed her while she was defenseless, in pain, and posed no threat to him. (Doc. 16-62 at 94–95). Mr. Rieber does not challenge these findings.[4] (*See generally* doc. 1). Moreover, some of the omitted evidence highlighted misconduct of which the sentencer was not aware, such as Mr. Rieber's history of selling drugs and his involvement with a fourteen-year-old girl who soon

---

[4] Mr. Rieber does challenge the sentencer's findings that he "stalked" the victim for days before the murder. (*See* doc. 1 at 18–23). As discussed below, the state court's "stalking" finding was not unreasonable. But for ease of analysis, the court will disregard that specific finding in its discussion of this claim.

began using drugs with him. (Doc. 16-31 at 29, 41; doc. 16-82 at 104, 106, 174–76, 189); *see Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1327 (11th Cir. 2013) (accepting as reasonable a state court's rejection of a similar claim where the mitigating evidence "was a two-edged sword or would have opened the door to damaging evidence") (quotation marks omitted); *Windom v. Sec'y, Dep't of Corr.*, 578 F.3d 1227, 1251 (11th Cir. 2009) ("[A]ny potential benefit to be gained by presenting the relatively weak mitigating evidence in [the petitioner]'s case would have been severely undercut by rebuttal evidence of his own misconduct . . . .").

To find the state court's determination on the prejudice prong unreasonable, the court would have to conclude that no reasonable jurist could have found a lack of prejudice. *See Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). But a reasonable jurist could conclude that the omitted evidence would not have changed the sentencing court's mind. Accordingly, the state courts' findings on the prejudice prong were reasonable under *Strickland* and *Wiggins*, and Mr. Rieber is not entitled to habeas relief on this claim.

### c. Claim Four

Mr. Rieber asserts that appellate counsel was ineffective for failing to challenge the state trial court's finding that he "stalked" the victim, which he contends was the "primary basis" for the trial court's finding that the crime was

particularly heinous, atrocious, and cruel. (Doc. 1 at 18). He contends that the trial court's factual finding that he stalked Ms. Craig was unreasonable because the evidence presented at trial does not establish that he committed the crime of stalking as defined by Alabama law. (*Id.* at 19–20; doc. 17 at 12). And, he says, the Alabama Court of Criminal Appeals' rejection of this claim was an unreasonable application of *Strickland* because it imposed an irrebuttable presumption that counsel acted strategically in deciding not to challenge the finding. (Doc. 1 at 21–22; doc. 17 at 13).

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*." *Brooks*, 719 F.3d at 1300. Mr. Rieber must therefore establish both that appellate counsel's performance was deficient and that the deficiency prejudiced him on appeal. *Id.* The prejudice inquiry requires the court "to consider the merits of the omitted claim" and whether "the neglected claim would have a reasonable probability of success on appeal." *Id.* (quotation marks omitted).

The sentencing court found that the murder was especially heinous, atrocious, or cruel compared to other capital offenses. (Doc. 16-62 at 93). In doing so, the court found that Ms. Craig was defenseless and posed no threat to Mr. Rieber; that Mr. Rieber "stalked the victim for several days before the murder," causing her

apprehension and fear; that Mr. Rieber planned the crime in advance; that Mr. Rieber intended to kill Ms. Craig; that Ms. Craig suffered before she died; and that Mr. Rieber had "no reason whatsoever" for the killing. (*Id.* at 93–95).

On appeal, appellate counsel challenged the denial of a motion to suppress evidence, the defense's use of a peremptory challenge to strike an Asian American juror for racial reasons in violation of *Batson*, the lack of guidelines in deciding whether to override the jury's advisory sentencing verdict, the sentencing court's finding that the offense was especially heinous, atrocious, or cruel, the sentencing court's findings about the lack of mitigating circumstances, and a penalty phase jury charge. (Doc. 16-1 at 10–11). With respect to the heinous, atrocious, or cruel aggravator, counsel argued that some of the factors the court considered were irrelevant and some were unsupported by the evidence. (*Id.* at 21–23). Counsel specifically argued that no evidence supported a finding that Mr. Rieber "stalked" Ms. Craig. (*Id.* at 21).

The Alabama Court of Criminal Appeals affirmed the conviction and death sentence in a reasoned opinion. *Rieber I*, 663 So. 2d at 998. Of relevance to this claim, the Court rejected the *Batson* argument on the ground that Mr. Rieber invited the error, *id.* at 990–92, and that the evidence "clearly support[ed]" the heinous, atrocious, or cruel aggravator, *id.* at 992–93. In his petition for writ of certiorari,

33

Mr. Rieber again challenged the heinous, atrocious, or cruel aggravator. (Doc. 16-2 at 33–35). Among other arguments against that aggravating factor, he contended that the stalking finding was based on hearsay. (*Id.* at 33 n.6). The Alabama Supreme Court, too, affirmed the conviction and death sentence. *Rieber II*, 663 So. 2d at 1015. The Supreme Court concluded that the evidence supported the sentencing court's findings, and specifically agreed with the findings that Mr. Rieber "had 'cased' the store and had stalked Ms. Craig for several days before the murder," that Ms. Craig was apprehensive and afraid of Mr. Rieber, that the murder was a brutal execution-style killing committed after she had been rendered helpless, and that she remained alive and in great pain for some time after the shooting. *Id.* at 1003–04.

In his amended Rule 32 petition, Mr. Rieber contended that appellate counsel was ineffective for failing to challenge the lack of evidence supporting the "stalking" finding. (Doc. 16-11 at 63 ¶ 79). At the Rule 32 evidentiary hearing, Mr. Rieber did not ask appellate counsel any questions about his reasons for failing to challenge the stalking finding. (*See* doc. 16-82 at 200–03; doc. 16-83 at 3–36, 48–50). Accordingly, the state habeas trial court found that Mr. Rieber had abandoned the ineffective assistance argument. (Doc. 16-32 at 36). In the alternative, the court determined that Mr. Rieber failed to prove the claim because he did not question

34

counsel about his reasons, and in any event, he failed to present any evidence or argument calling into question the support for the stalking finding. (*Id.* at 36–37).

On appeal, the Alabama Court of Criminal Appeals agreed with the state trial court's conclusion that Mr. Rieber failed to prove the claim. (Doc. 16-93 at 123). The Court applied a presumption that counsel's reason for not making an argument was strategic and concluded that Mr. Rieber had not rebutted that presumption because he did not question counsel about why he failed to challenge the stalking finding on appeal. (*Id.* at 123–24).

The Alabama Court of Criminal Appeals' decision was a merits-based rejection of Mr. Rieber's claim. (*See* doc. 16-93 at 123–24). Although the Court of Criminal Appeals discussed only deficiency, that court expressly concluded that Mr. Rieber failed to prove that trial counsel's "performance was deficient or that his performance prejudiced [him]." (*Id.* at 124). The fact that the Court's decision does not explain its rationale for the prejudice determination does not mean that it failed to address the prejudice prong on the merits. *See Reaves*, 872 F.3d at 1151 ("[T]he fact that a state court did not explain every step of its decision-making process does not mean that it did not adjudicate every prong of an ineffective assistance claim."); *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002) ("Telling state courts when and how to write opinions to accompany their decisions is no way

35

to promote comity. Requiring state courts to put forward rationales for their decisions so that federal courts can examine their thinking smacks of a 'grading papers' approach that is outmoded in the post-AEDPA era."). This court must afford § 2254(d) deference to the Alabama Court of Criminal Appeals' rejection of this ineffective assistance claim on both prongs.[5]

The state court's rejection of this claim was not an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The Alabama Court of Criminal Appeals determined that Mr. Rieber had not carried his burden of presenting evidence to rebut the presumption that counsel performed effectively. (Doc. 16-93 at 123–24). Mr. Rieber argues this was an unreasonable application of *Strickland* because no reasonable attorney could have made a strategic decision not to challenge the stalking finding, which was unsupported by any evidence. (Doc. 1 at 23; doc. 17 at 11). A necessary predicate for this argument is a finding that the stalking finding was, itself, unreasonable and unsupported. Mr. Rieber cannot prevail on either argument.

The court will begin with the predicate—the stalking finding. Because a state court made that finding, Mr. Rieber must establish that the sentencing court's finding

---

[5] Even if the court were to review the prejudice prong *de novo*, that prong would fail for the reasons explained below.

that he stalked Ms. Craig was unreasonable in light of the evidence before the Alabama Court of Criminal Appeals, *see* 28 U.S.C. § 2254(d)(2), and that clear and convincing evidence rebuts the presumption that the state court's finding was correct, *id.* § 2254(e)(1).

Mr. Rieber's only argument about the correctness of the sentencing court's stalking finding derives from the evidence presented during trial. Specifically, Tommy Erskine saw Mr. Rieber sitting in a car outside the convenience store several days before the murder, and later that same day saw Mr. Rieber drive by the store, prompting him to tell Ms. Craig to call the police because Mr. Rieber "was patrolling the store." *Rieber I*, 663 So. 2d at 987; (*see also* doc. 16-93 at 97). And Allen Wayne Gentle saw Mr. Rieber in the convenience store several hours before the murder, at which time Ms. Craig asked him several questions, in response to which he identified Mr. Rieber and said, "I don't think he would do nothing like that." *Rieber I*, 663 So. 2d at 987.

Mr. Rieber contends that there was evidence Mr. Erskine could not have seen Mr. Rieber's car in the weeks before the murder because the car Mr. Erskine saw had a Tennessee license plate while Mr. Rieber's car had an Alabama license plate. (Doc. 1 at 19). He further argues that Mr. Erskine never saw Mr. Rieber interact with Ms. Craig, and any evidence that Ms. Craig was fearful came from "hearsay

statements by Mr. Erskine inferring that the victim was afraid." (*Id.* at 19–20). Finally, he asserts that the evidence presented does not rise to the level of stalking as defined by Alabama law. (*Id.* at 20). None of these arguments clearly and convincingly proves that the sentencing court erroneously found that Mr. Rieber stalked Ms. Craig before the murder.

For one thing, Mr. Erskine did not only identify Mr. Rieber's car as the car he saw patrolling the store; he identified Mr. Rieber as the man inside the car and as the man he saw entering the store. (Doc. 16-76 at 96). And during cross-examination, trial counsel elicited testimony from Mr. Erskine that the car he saw had Tennessee plates, while Mr. Rieber's car had Alabama plates. (*Id.* at 100). A reasonable factfinder could have considered that evidence and still found that Mr. Erskine saw Mr. Rieber patrolling the convenience store days before the murder. *See Landers*, 776 F.3d at 1294 (explaining that a factfinding is unreasonable if the evidence "is too powerful to conclude anything but the petitioner's factual claim" or "the state court's finding was clearly erroneous"). Nor does the license plate evidence clearly and convincingly rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

For another thing, this court cannot consider Mr. Rieber's challenge to the court's evidentiary ruling in allowing Mr. Erskine to testify about what he inferred from statements that Ms. Craig made to him. Even assuming that the state court erred

by allowing Mr. Erskine's testimony about what he understood of Ms. Craig's state of mind—which this court strongly doubts—"generally federal courts are not empowered to correct erroneous evidence rulings of state trial courts." *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998).

Finally, Mr. Rieber's arguments about whether the evidence presented rose to the level of stalking as defined by Alabama law are unavailing. It is not clear that the sentencing court actually found that Mr. Rieber stalked Ms. Craig in the criminal sense of the word, as opposed to the colloquial sense of the word. (*See* doc. 16-62 at 93). What is clear is that the sentencing court relied heavily on evidence that Ms. Craig "was aware of his presence and was apprehensive and afraid of him." (*Id.*); *see also Rieber II*, 663 So. 2d at 1003 (approving the sentencing court's "stalking" finding and explaining that "fear experienced by the victim before death is a significant factor in determining the existence of the aggravating circumstance that the murder was especially heinous, atrocious, or cruel"). And in any event, even if the state courts had found that Mr. Rieber "stalked" Ms. Craig as defined by Alabama law, this court would be bound by their interpretation of Alabama law. *See Pietri*, 641 F.3d at 1284. Accordingly, Mr. Rieber cannot establish that the sentencing court's "stalking" finding was unreasonable or incorrect. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Mr. Rieber also cannot prevail on the second part of his claim, which is that the Alabama Court of Criminal Appeals unreasonably applied an "irrebuttable presumption" that appellate counsel acted strategically when declining to raise this issue on appeal. (*See* doc. 1 at 21). As an initial matter, nothing about the Court of Criminal Appeals' decision indicates that the presumption it applied was "irrebuttable." Indeed, the court's decision was premised on the fact that Mr. Rieber did *not* rebut the presumption of reasonableness. (*See* doc. 16-93 at 123). And the presumption of reasonableness arises from *Strickland* itself. *Strickland*, 466 U.S. at 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

But even if the Alabama Court of Criminal Appeals had unreasonably applied *Strickland* by applying an irrebuttable presumption that counsel acted strategically, *de novo* review of the deficient performance prong would not avail Mr. Rieber. Mr. Rieber appears to argue that because counsel exhibited poor judgment by asserting an entirely unrelated and frivolous *Batson* challenge—which the appeals court rejected as invited error—the court can find appellate counsel's performance deficient in general. (*See* doc. 1 at 24; doc. 17 at 4–5; 14–15). But Mr. Rieber cites no caselaw supporting that position, and he does not address the fact that counsel

40

asserted various other claims, some of which had significant merit. *See, e.g.*, *Rieber I*, 663 So. 2d at 987–90. Moreover, the record establishes that counsel, in fact, did challenge the stalking finding. (Doc. 16-1 at 21; doc. 16-2 at 33 n.6). Mr. Rieber cannot establish deficient performance.

Mr. Rieber also cannot overcome § 2254(d) deference on the performance prong. The Alabama Supreme Court found that the evidence supported a stalking finding. *Rieber II*, 663 So. 2d at 1003. Accordingly, Mr. Rieber cannot show a reasonable probability that challenging the stalking finding would have changed the outcome of the appeal. *See Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013) ("It is . . . crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim."). Finally, even if a different or more fulsome argument about the propriety of the stalking finding could have been meritorious, Mr. Rieber has not addressed any of the five other factors that the sentencing and appeals courts found supported the heinous, atrocious, or cruel factor. (*See* doc. 1 at 18–23). He therefore cannot establish that the Alabama Court of Criminal Appeals' rejection of this claim on the prejudice prong was unreasonable.

### d. Claim Six

Mr. Rieber asserts that the Supreme Court's decision in *Hurst* requires that the court vacate his death sentence for three reasons: the sentencing court's override

of the jury's advisory verdict violated Mr. Rieber's Sixth Amendment right to a trial by jury, sentencing Mr. Rieber to death violates his Eighth Amendment right not be sentenced in an arbitrary and capricious manner, and Alabama's 2017 amendment to its sentencing scheme results in a violation of Mr. Rieber's Fourteenth Amendment right to equal protection. (Doc. 1 at 26–34). To understand Mr. Rieber's claims, the court must set out in some detail the sentencing scheme Alabama used when Mr. Rieber was sentenced, as well as later developments in the legal landscape, and how Mr. Rieber's state proceedings intersected with those developments.

Mr. Rieber was tried, convicted, and sentenced in 1992. (*See* doc. 16-62 at 88, 101). At that time (as now), Alabama's capital sentencing statute provided that murder "during a robbery in the first degree" was a capital offense punishable by death. Ala. Code § 13A-5-40(a)(2) (1987); *see also id.* § 13A-5-39(1) (1981). If a jury found the defendant guilty of a capital offense, the trial court would set a sentence hearing so that the jury could issue an advisory verdict. *Id.* § 13A-5-45(a) (1981); *id.* § 13A-5-46(a) (1981). The jury was required to recommend life imprisonment if it found no statutorily defined aggravating circumstances or if it found that the statutorily defined aggravating circumstances did not outweigh any mitigating circumstances, and it had to recommend a death sentence if it found that

one or more statutorily defined aggravating circumstances existed and outweighed any mitigating circumstances. *Id.* § 13A-5-46(e) (1981).

One statutorily defined aggravating circumstance was that the defendant "was engaged . . . in the commission of . . . robbery"; another was that the crime was "especially heinous, atrocious, or cruel compared to other capital offenses." *Id.* § 13A-5-49(4), (8) (1982). Because the jury's verdict convicting Mr. Rieber established the aggravating circumstance that he committed the murder in the course of a robbery, Alabama's capital sentencing statute required the jury to consider that aggravating circumstance "as proven beyond a reasonable doubt." *Id.* § 13A-5-45(e) (1982). Accordingly, it had to have found at least one aggravating circumstance beyond a reasonable doubt, and its recommendation of life must have been because it found that the aggravating circumstances did not outweigh the mitigating circumstances. *See id.*

After the jury issued its advisory verdict, the trial court had to determine the sentence after considering the evidence presented at trial, during the penalty hearing, and in a pre-sentence investigation report, along with arguments by the parties about "the existence of aggravating and mitigating circumstances and the proper sentence to be imposed in the case." Ala. Code § 13A-5-47(c)–(d) (1981). The sentencing court was required to consider, on its own, "whether the aggravating circumstances

it finds to exist outweigh the mitigating circumstances it finds to exist, and in doing so the trial court [had to] consider the recommendation of the jury contained in its advisory verdict," but the advisory verdict was "not binding upon the court." *Id.* § 13A-5-47(e) (1981). A court's decision to disregard the jury's advisory verdict and impose a different sentence is referred to as "judicial override."

In Mr. Rieber's direct appeal to the Alabama Court of Criminal Appeals— submitted in March 1993—he challenged the constitutionality of Alabama's judicial override. (Doc. 16-1 at 17–29, 32). The Alabama Court of Criminal Appeals rejected that claim on the ground that judicial override was constitutional. *Rieber I*, 663 So. 2d at 992. Mr. Rieber again raised his constitutional challenges to the judicial override in his petition for certiorari to the Alabama Supreme Court, which he filed in December 1994. (Doc. 16-2 at 78–82, 102). While Mr. Rieber's appeal to the Alabama Supreme Court was pending, the United States Supreme Court decided *Harris v. Alabama*, 513 U.S. 504, 512 (1995), holding that the Alabama statute was not unconstitutional because of its failure to specify the weight a sentencing judge must accord an advisory jury verdict. Based on *Harris* and other caselaw, the Alabama Supreme Court rejected Mr. Rieber's challenge to the constitutionality of Alabama's judicial override provision. *Rieber II*, 663 So. 2d at 1003.

44

At the time of Mr. Rieber's trial and appeal, United States Supreme Court caselaw squarely held that the Constitution did not require a jury to make all findings underlying a sentencing decision. *Clemons v. Mississippi*, 494 U.S. 738, 745 (1990); *Walton v. Arizona*, 497 U.S. 639 (1990), overruled by *Ring v. Arizona*, 536 U.S. 584 (2002). Indeed, in *Walton*, the Supreme Court upheld the constitutionality of Arizona's capital sentencing statute. 497 U.S. at 643. That statute provided that after a defendant had been convicted of first degree murder, the trial court had to hold a separate sentencing hearing, determine the existence of aggravating and mitigating circumstances, and determine whether to impose death or life imprisonment. *Id*. The *Walton* Court explained that aggravating circumstances were not elements of an offense that a jury must determine, but instead were "standards to guide the making of the choice between the alternative verdicts of death and life imprisonment." *Id.* at 648 (quotation marks and alteration omitted).

In 2000, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The *Apprendi* Court highlighted that the rule it announced did not "render invalid state capital sentencing schemes requiring judges, after a jury verdict holding a defendant guilty of a capital

crime, to find specific aggravating factors before imposing a sentence of death." *Id.* at 496. The Court explained that "once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed." *Id.* at 497 (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 257 (1999) (Scalia, J., dissenting)).

Two years later, in *Ring v. Arizona*, 536 U.S. 584, 589 (2002), the United States Supreme Court held that "[c]apital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." In that case, a jury found the defendant guilty of felony murder, an offense for which the maximum penalty was life imprisonment. *Id.* at 592. But Arizona's capital sentencing scheme permitted the trial judge to impose a death sentence after conducting a separate sentencing hearing and finding the existence of aggravating and mitigating circumstances. *Id.* The trial judge sentenced the defendant to death based on evidence presented only to the court. *Id.* at 593–95. Relying on *Apprendi*, the United States Supreme Court held that Arizona's capital sentencing scheme was unconstitutional because it allowed the sentencing judge to find the facts necessary to impose the death penalty, which otherwise would not have been available. *Id.* at 609.

In 2004, Mr. Rieber filed his amended Rule 32 petition, which challenged the constitutionality of Alabama's jury override provision under the Fourteenth Amendment. (Doc. 16-11 at 52–53). The state habeas trial court, in a 2015 decision, found this claim procedurally barred because Mr. Rieber had already raised it on direct appeal. (Doc. 16-31 at 52–54).

While Mr. Rieber's appeal of the denial of his Rule 32 petition was pending, the United States Supreme Court decided *Hurst v. Florida*, 577 U.S. 92 (2016). In that case, a jury found the defendant guilty of first degree murder, a capital felony. *Id.* at 95. Under Florida law, a conviction for first degree murder was limited to life imprisonment unless "an additional sentencing proceeding result[ed] in findings by the court that such person shall be punished by death." *Id.* (quotation marks omitted). The sentencing proceeding involved an evidentiary hearing held before a jury, which would issue "an 'advisory sentence' of life or death without specifying the factual basis of its recommendation." *Id.* at 95–96. The sentencing court would make factual findings about aggravating and mitigating circumstances and impose the sentence, giving the jury's advisory verdict "great weight." *Id.* at 96. The jury in *Hurst* recommended a death sentence and the judge sentenced the defendant to death. Relying on *Ring* and *Apprendi*, the United States Supreme Court found Florida's capital sentencing scheme unconstitutional because it allowed "a sentencing judge

47

to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty." *Id.* at 102; *see also id.* at 98–99; *but see McKinney v. Arizona*, 140 S. Ct. 702, 707 (2020) ("Under *Ring* and *Hurst*, a jury must find the aggravating circumstance that makes the defendant death eligible. But importantly, in a capital sentencing proceeding just as in an ordinary sentencing proceeding, a jury (as opposed to a judge) is not constitutionally required to weigh the aggravating and mitigating circumstances or to make the ultimate sentencing decision within the relevant sentencing range.").

On appeal of the denial of his Rule 32 petition, Mr. Rieber argued that *Hurst* mandated vacatur of his death sentence because the sentencing court overrode the jury's advisory verdict based on the court's own factual findings. (Doc. 16-91 at 84–89). The Alabama Court of Criminal Appeals denied this claim on the grounds that *Hurst* was not retroactively applicable to Mr. Rieber because the Supreme Court decided it after his conviction became final and, in any event, Alabama's sentencing scheme did not violate *Hurst* because the jury made the finding permitting imposition of the death penalty. (Doc. 16-93 at 135–36).

In 2017, Alabama amended its capital sentencing scheme. 2017 Ala. Laws Act 2017-131 (S.B. 16). The amended statute provides that the trial court must impose the sentence decided by the jury. Ala. Code § 13A-5-47(a). The jury can

enter a death verdict only "on a vote of at least 10 jurors." *Id.* § 13A-5-46(f). But the 2017 amendment "shall not apply retroactively to any defendant who has previously been convicted of capital murder and sentenced to death prior to April 11, 2017." *Id.* § 13A-5-47.1.

In his § 2254 petition, Mr. Rieber makes the same three *Hurst* claims he made to the Alabama Court of Criminal Appeals during his state collateral proceeding: (1) his death sentence violates the Sixth Amendment because Alabama's capital sentencing scheme permitted a judge to override a jury's recommendation based on factual findings not made by the jury; (2) his death sentence violates the Eighth Amendment because it is arbitrary and capricious to impose the death penalty in light of evolving standards that resulted in abolition of judicial override, especially given statistical evidence that elected judges frequently override jury recommendations of life imprisonment when the victim is white; and (3) his death sentence violates equal protection because the 2017 amendment's non-retroactivity provision means that an identically situated defendant sentenced after 2017 would get a different sentence than he did. (Doc. 1 at 26–34). The court will address each argument in turn.

### i.      Sixth Amendment

First, it was not unreasonable for the Alabama Court of Criminal Appeals to reject Mr. Rieber's Sixth Amendment claim. *Hurst* and its predecessor *Ring* "do not apply retroactively on collateral review." *McKinney*, 140 S. Ct. at 708. This is because *Ring*, on which *Hurst* was based, announced a "new procedural rule," which under United States Supreme Court precedent applies prospectively and to cases still pending on direct review, but not to any cases already final on direct review. *Id.*; *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).

Mr. Rieber's conviction became final in 1995, when the United States Supreme Court denied certiorari in Mr. Rieber's direct appeal. *See Beard v. Bank*s, 542 U.S. 406, 408 (2004); *see also Rieber II*, 663 So. 2d at 1000; *Rieber v. Alabama*, 516 U.S. 995 (1995). That was years before the United States Supreme Court decided *Apprendi*, *Ring*, or *Hurst*. *Hurst*, 577 U.S. at 92 (2016); *Ring*, 536 U.S. at 589 (2002); *Apprendi*, 530 U.S. at 466 (2000). Accordingly, Mr. Rieber is not entitled to the benefit of the new procedural rule announced in any of those cases, *see McKinney*, 140 S. Ct. at 708, and the state habeas appellate court's rejection of his *Hurst* claim was not an unreasonable application of clearly established federal law, *see* 28 U.S.C. § 2254(d)(2).

50

## ii.   Eighth Amendment

Mr. Rieber next argues that, under *Hurst*, his death sentence is arbitrary and capricious, in violation of the Eighth Amendment, because the *Hurst* petitioner received a life sentence despite the same seven to five split vote Mr. Rieber received, no States still permit a judicial override of a jury's life recommendation, and elected judges in Alabama frequently overrode life verdicts in cases involving white murder victims.[6] (Doc. 1 at 30–32). Mr. Rieber made this argument to the Alabama Court of Criminal Appeals on appeal from the denial of his Rule 32 petition. (Doc. 16-91 at 89). The Alabama Court of Criminal Appeals, in denying this claim on the merits, did not explain its rationale. (*See* doc. 16-93 at 135–36 & n.12 (citing the part of Mr. Rieber's brief raising this argument); doc. 16-91 at 89); *see Reaves*, 872 F.3d at 1151; *Wright*, 278 F.3d at 1255.

The Alabama Court of Criminal Appeals' rejection of this claim was not based on an unreasonable application of clearly established federal law and, even under *de novo* review, this claim would fail. Although Mr. Rieber asserts this as a *Hurst* claim, the *Hurst* decision makes no holding about the Eighth Amendment; *Hurst* relates to

---

[6] Mr. Rieber makes another arbitrariness challenge to his sentence in Claim Eight. (*See* Doc. 1 at 35–36). The court will address that claim separately.

the Sixth Amendment. *See* 577 U.S. at 102. The state court therefore could not have unreasonably applied *Hurst* to Mr. Rieber's Eighth Amendment claim.

Mr. Rieber cites to *Furman v. Georgia*, 408 U.S. 238 (1972) and *Gregg v. Georgia*, 428 U.S. 153 (1976), in support of his Eighth Amendment claim. (Doc. 1 at 30). Those decisions "establish that a state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Kansas v. Marsh*, 548 U.S. 163, 173–74 (2006). Mr. Rieber argues that his sentence is arbitrary because the *Hurst* petitioner received a life sentence despite the same seven to five split jury verdict Mr. Rieber received. (Doc. 1 at 30–31). As an initial matter, nothing in the *Hurst* decision indicates that the *Hurst* petitioner was automatically entitled to a life sentence: the United States Supreme Court struck down Florida's capital sentencing scheme and remanded for further proceedings, but did not, on its own, impose a life sentence. *See* 577 U.S. at 102–03. On remand from the *Hurst* decision, the Florida Supreme Court vacated the petitioner's sentence and remanded for a new penalty phase proceeding. *Hurst v. State*, 202 So. 3d 40, 69 (Fla. 2016).

This distinction highlights why the state courts' rejection of this arbitrariness claim was not unreasonable. Under the sentencing scheme applicable to Mr. Rieber, the jury's advisory verdict was just one factor that the sentencer had to consider. Ala. Code § 13A-5-47(e) (1981). The other factors—the specifics of the murder, the defendant's history and characteristics, and any other relevant circumstances, either aggravating or mitigating—necessarily differ from defendant to defendant. *See, e.g.*, *id.* § 13A-5-49 (1981) (enumerating aggravating circumstances); *id.* § 13A-5-51 (1981) (enumerating mitigating circumstances); *id.* § 13A-5-52 (1981) (providing that the sentencer must consider any other mitigating circumstance offered by the defendant). Two juries splitting in the same proportion does not mean that a difference between the sentences imposed on the two defendants is arbitrary under *Furman* and *Gregg*. There is no indication in the record that the sentencer was unable to make a "reasoned, individualized sentencing determination based on [Mr. Rieber's] record, personal characteristics, and the circumstances of his crime" in such a way that his sentence would violate *Furman* and *Gregg*. *See Marsh*, 548 U.S. at 173–74.

Mr. Rieber also argues that his sentence is arbitrary and capricious because no States still allow judicial override of a jury's life recommendation. (Doc. 1 at 31–32). He does not explain how *Hurst*, or the post-*Hurst* legislative abolition of judicial

override, makes his sentence, imposed when judicial override was permissible, arbitrary and capricious. (*See id.*). Neither of the cases he cites establish that a death sentence is arbitrary and capricious when it was imposed, over a jury's life recommendation, before the national consensus changed. (*See id.*); *see Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the death penalty is an unconstitutionally disproportionate sentence to impose on an intellectually disabled defendant, as evidenced by a national legislative consensus prohibiting or disapproving the execution of such defendants); *Witherspoon v. Illinois*, 391 U.S. 510 (1968) (holding that the categorical exclusion of all jurors who expressed qualms about capital punishment violates a defendant's Sixth and Fourteenth Amendment right to an impartial jury). Accordingly, Mr. Rieber has not established that the Alabama Court of Criminal Appeals' rejection of this claim was an unreasonable application of clearly established federal law.

Finally, Mr. Rieber argues that his death sentence was arbitrary and capricious because elected judges frequently override jury recommendations of life imprisonment in cases with white victims. (Doc. 1 at 31–32). Although he makes this argument in connection with his *Hurst* claim, he does not explain what it has to do with the *Hurst* decision. Moreover, the only caselaw Mr. Rieber provides in support of this argument is an opinion dissenting from the denial of a writ of

54

certiorari. (Doc. 1 at 32); *see Woodward v. Alabama*, 571 U.S. 1045 (2013) (Sotomayer, J., dissenting from the denial of a writ of certiorari). A dissenting opinion, much less an opinion dissenting from the denial of a writ of certiorari, cannot constitute "clearly established federal law," which is strictly limited to "the holdings . . . of [the United States Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. Accordingly, Mr. Rieber has not established that the Alabama Court of Criminal Appeals' rejection of this claim was contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(2).

### iii.   Fourteenth Amendment

Mr. Rieber's final argument relating to *Hurst* is that his death sentence violates the Equal Protection Clause of the Fourteenth Amendment because Alabama's 2017 repeal of the judicial override means that no person tried today who receives the same split jury verdict as him could receive the same sentence as him. (Doc. 1 at 33).

Mr. Rieber made this argument to the Alabama Court of Criminal Appeals in a letter brief during the pendency of his appeal of the denial of his Rule 32 petition (doc. 16-92 at 143), but the Alabama Court of Criminal Appeals did not address the argument and he did not reiterate it in his petition for certiorari to the Alabama

Supreme Court (*see* doc. 16-94 to 16-96; doc. 16-97 at 1–13). However, the State concedes exhaustion. (Doc. 14 at 59). Accordingly, the court will address this argument on the merits.

As the Eleventh Circuit has explained, "no U.S. Supreme Court decision holds that the failure of a state legislature to make revisions in a capital sentencing statute retroactively applicable to all of those who have been sentenced to death before the effective date of the new statute violates the Equal Protection Clause." *Lambrix v. Sec'y, DOC*, 872 F.3d 1170, 1183 (11th Cir. 2017). And the Eleventh Circuit has held that the Supreme Court's decision in *Dobbert v. Florida*, 432 U.S. 282 (1977) is inconsistent with any such claim. *Lambrix*, 872 F. 3d at 1183.

In *Dobbert*, the petitioner committed several murders. 432 U.S. at 288. Shortly after the murders, but before his trial, the Florida Supreme Court struck down Florida's capital statute as unconstitutional, pursuant to the United States Supreme Court's then-recent decision in *Furman v. Georgia*. *Id.* at 288, 301. The Florida Supreme Court commuted the sentences of all prisoners sentenced to death under the old statute. *Id.* at 301. But the petitioner was tried under the new statute. *Id.* The petitioner contended that, because he committed his crimes before the enactment of the new statute but was sentenced under the new statute, the imposition of the death penalty violated his right to equal protection. *Id.* The United States Supreme Court

56

rejected that claim, explaining that "petitioner is simply not similarly situated to those whose sentences were commuted. He was neither tried nor sentenced prior to *Furman*, as were they." *Id.*

In *Lambrix*, the Eleventh Circuit explained that the reasoning in *Dobbert* applied to the petitioner's equal protection claim challenging Florida's non-retroactive change to its capital sentencing statute. 872 F.3d at 1183. Likewise, Mr. Rieber's equal protection challenge to Alabama's non-retroactive change to its capital sentencing statute must fail under *Dobbert* because he has not shown that he is similarly situated to any prisoners who have been sentenced under the new statute. *See* 432 U.S. at 301. Accordingly, Mr. Rieber has not shown entitlement to relief under the Equal Protection Clause of the Fourteenth Amendment.

e. *Claim Eight*

Mr. Rieber asserts that the capital sentencing scheme applicable to his trial was unconstitutionally arbitrary on two grounds: (1) because it did not "sufficiently narrow the decision maker's discretion in deciding whether to impose the penalty of death"; and (2) permitting judicial override in States where judges are elected results in judges who are more likely to override a jury's recommendation of life imprisonment. (Doc. 1 at 35–36). The constitutional basis for this claim is not entirely clear—he says that the statutory scheme violates his rights to due process

and equal protection but cites only a case decided under the Cruel and Unusual Punishment Clause of the Eighth Amendment, as applicable to the States via the Fourteenth Amendment. (*Id.* at 36).

In his amended Rule 32 petition, Mr. Rieber made these same arguments in support of due process and equal protection claims. (Doc. 16-11 at 52 ¶¶ 32–33, 52–53 ¶ 36). The state habeas trial court denied those claims on the merits because Mr. Rieber failed to adequately plead and prove them. (Doc. 16-31 at 51–52, 54–55). On appeal, Mr. Rieber argued that Alabama's capital sentence scheme was arbitrary, in violation of the Eighth and Fourteenth Amendments, because it did not genuinely narrow the class of persons eligible for the death penalty. (Doc. 16-91 at 91–92). And in support of his *Hurst* Sixth Amendment claim—discussed in the preceding section—he argued that judicial elections inject arbitrariness into a court's decision to override a jury's advisory verdict. (*Id.* at 86–88). The Alabama Court of Criminal Appeals rejected both arguments on the merits. (Doc. 16-93 at 135 n.12 (acknowledging the effect-of-elections argument), 137–38 (rejecting the arbitrariness argument).

The State concedes that Mr. Rieber exhausted the "standards of discretion" part of his claim but contends that he failed to exhaust the judicial-elections part of

his claim.[7] (Doc. 14 at 81). Mr. Rieber replies that the judicial-elections issue is an argument in support of arbitrariness, not a freestanding claim. (Doc. 17 at 19). Ultimately, the court need not determine whether this is an argument, which Mr. Rieber is permitted to clarify on federal collateral review, or a substantive change, which he failed to exhaust. *See, e.g.*, *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[H]abeas petitioners are permitted to clarify the arguments presented to the state courts on federal collateral review provided that those arguments remain unchanged in substance."). The court has discretion to deny—although not to grant—even unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). And for the reasons stated below, this claim is meritless, so the court exercises that discretion.

In support of this claim, Mr. Rieber cites only *Furman*, which held, without explanation, that three petitioners' death sentences were cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments. (Doc. 1 at 36);

---

[7] The State does not address whether Mr. Rieber's shifting reliance on due process, equal protection, and cruel and unusual punishment changes the exhaustion analysis. Because the State does not argue exhaustion on that ground and because Mr. Rieber's claim is meritless in any event, the court will also not address whether Mr. Rieber failed to exhaust the claim by changing its constitutional basis throughout his state collateral proceedings.

*Furman*, 408 U.S. at 239–40. Although five justices agreed that the sentences were unconstitutional, none agreed on the precise grounds, and each wrote a separate concurring opinion. *See Furman*, 408 U.S. at 239–371. A plurality of the Supreme Court later explained that the narrowest grounds were articulated by Justices Stewart and White, *Gregg*, 428 U.S. at 169 n.15, who wrote that the sentences were cruel and unusual because "the petitioners are among a capriciously selected random handful upon whom the sentence of death has in fact been imposed," *Furman*, 408 U.S. at 309 (Stewart, J., concurring in the judgment), and because "the death penalty is exacted with great infrequency even for the most atrocious crimes and that there is no meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not," *id.* (White, J., concurring in the judgment). The Supreme Court has since explained that *Furman* and *Gregg* "establish that a state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Marsh*, 548 U.S. at 173–74.

Mr. Rieber argues that the capital sentencing scheme in effect at the time of his trial fails to satisfy that standard because the availability of judicial override incentivized elected judges to impose the death penalty and Mr. Rieber's sentence

was more severe than other capital cases in which defendants who engaged in worse conduct received life sentences. (Doc. 1 at 35–36; doc. 17 at 18–19). Mr. Rieber's claim fails, whether under § 2254(d) deference or *de novo* review.

The capital sentencing scheme under which Mr. Rieber was sentenced authorized a death sentence only for specifically enumerated homicide offenses, and therefore "rationally narrow[ed] the class of death-eligible defendants." *Marsh*, 548 U.S. at 173–74; *see* Ala. Code § 13A-5-40(a) (1987) (listing fourteen specific types of murder that constitute capital offenses). Moreover, the sentencing scheme listed eight specific aggravating circumstances that the sentencer had to consider in determining whether to impose the death penalty, Ala. Code § 13A-5-49 (1982), as well as seven specifically listed mitigating factors, *id.* § 13A-5-50 (1981), and other mitigating circumstances in the form of "any aspect of a defendant's character or record and any of the circumstances of the offense," *id.* § 13A-5-52 (1981). By its very terms, the statute required a "reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Marsh*, 548 U.S. at 173–74.

Mr. Rieber argues that his sentence was arbitrary based on the likelihood of judicial override in cases involving white victims. (Doc. 1 at 36). But as the United States Supreme Court explained in *Harris*, even accepting judicial override statistics

as "a true view of capital sentencing in Alabama, they say little about whether the scheme is constitutional. That question turns not solely on a numerical tabulation of actual death sentences as compared to a hypothetical alternative, but rather on whether the penalties imposed are the product of properly guided discretion and not of arbitrary whim." 513 U.S. at 514.

Mr. Rieber's argument that his sentence was arbitrary because other defendants in unrelated cases received life sentences is likewise unavailing. (Doc. 17 at 18–19). Under the statute, the weighing of aggravating and mitigating circumstances "shall not be defined to mean a mere tallying of aggravating and mitigating circumstances for the purpose of numerical comparison." Ala. Code § 13A-5-48 (1981). The Supreme Court has explained that this provision, "which is no less than what the Constitution requires . . . reflects the fact that, in the subjective weighing process, the emphasis given to each decisional criterion must of necessity vary in order to account for the particular circumstances of each case." *Harris*, 513 U.S. at 515. Mr. Rieber's plucking of one factor from two cases, without discussion of any of the other aggravating or mitigating circumstances considered by the sentencers in each case, cannot establish that his sentence was imposed arbitrarily.

62

###### f.   Claim Nine

Mr. Rieber asserts that his execution would be unconstitutional, in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, as incorporated by the Fourteenth Amendment, because the Alabama statute in effect when he filed his § 2254 petition provided for execution by either electrocution or lethal injection, either of which involve a risk that he will suffer unnecessary and prolonged pain, making the execution cruel and unusual. (Doc. 1 at 37–38). Since Mr. Rieber filed his § 2254 petition, the Supreme Court has held that a claim challenging a State's method of execution is properly brought under 42 U.S.C. § 1983, not in a petition for writ of habeas corpus under 28 U.S.C. § 2254. *Nance v. Ward*, 142 S. Ct. 2214, 2219 (2022). The court therefore **DISMISSES** this claim **WITHOUT PREJUDICE** to refiling under § 1983.

###### g.   Claim Ten

When Mr. Rieber was on trial in 1992, Alabama law capped appointed counsel's compensation for "out-of-court work" at $1,000, billed at $20 per hour, plus "payment for all in-court work," billed at $40 per hour. Ala. Code § 15-12-21(d) (1984). In 1999, Alabama removed the cap on an appointed attorney's total fee and increased the hourly rates. 1999 Ala. Laws Act 1999-427 (H.B. 53).

Mr. Rieber claims that Alabama, by imposing the $1,000 cap, denied him due process, equal protection, and effective assistance of counsel because no effective attorney could do all the work required within the compensable hours. (Doc. 1 at 39–41). He contends that the State has not proved that his attorneys actually did all the tasks an attorney would need to do to effectively represent a capital defendant. (Doc. 17 at 21).

Mr. Rieber raised this claim in his amended Rule 32 petition. (Doc. 16-11 at 55–57). The state habeas trial court denied this claim on the merits because the fee cap was constitutional and because Mr. Rieber had not proved that his representation was affected by the cap. (Doc. 16-31 at 61–62). On appeal, the Alabama Court of Criminal Appeals affirmed, explaining that under Alabama Supreme Court precedent, the compensation cap was constitutional. (Doc. 16-93 at 140–41).

Although not entirely clear, Mr. Rieber's claim appears to be that because the statute capped his counsel's compensation, counsel was necessarily ineffective. But a claim of ineffective assistance of counsel requires the petitioner to establish both that his attorney was actually deficient and that the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. Mr. Rieber contends that no attorney could have performed all the tasks required in a capital murder case, but he does not allege what tasks his attorneys failed to perform. Indeed, he attempts to shift the burden

onto the State, arguing that the State failed to prove that his attorneys performed each task. (Doc. 17 at 21). But the burden rests on him to "establish[ ] his right to federal habeas relief and of prov[e] all facts necessary to show a constitutional violation." *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001); *see also* Rules Governing Section 2254 Cases, R. 2(c) ("The petition must . . . state the facts supporting each ground . . . ."); *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements, see [ ] Rule 2(c) . . . .").

Mr. Rieber has not alleged facts that would, if true, establish that he received ineffective assistance based on the compensation cap. (*See* doc. 1 at 39–42). Nor has he identified any United States Supreme Court cases that would make the state court's decision unreasonable or contrary to federal law. (*See id.*). Accordingly, he cannot establish that the state courts' rejection of this claim was unreasonable.

### h. Claim Eleven

Mr. Rieber asserts that the State spoliated evidence of his intoxication on the night of the murder because, despite him showing "clear signs of intoxication," the State failed to test his blood and urine or to appoint counsel who could have ensured that the State tested his blood and urine. (Doc. 1 at 42–44; doc. 17 at 22). He asserts that the spoliation denied him due process and equal protection. (Doc. 1 at 44).

Mr. Rieber asserted this claim in his amended Rule 32 petition. (Doc. 16-11 at 57–58). At the Rule 32 evidentiary hearing, Mr. Rieber called Dr. Alex Stalcup, a physician who specialized in treatment of drug and alcohol addiction. (Doc. 16-31 at 48; doc. 16-83 at 134–36). Dr. Stalcup testified that in 1990, a test performed up to ten or twelve days after ingestion could have detected the presence of marijuana in a smoker's urine. (Doc. 16-83 at 140). A test performed up to three days after ingestion could have detected LSD, meth, or cocaine. (*Id.* at 141). And a blood test performed up to twenty-four hours after ingestion could have detected alcohol. (*Id.*). After the state habeas trial court rejected this claim (doc. 16-31 at 58–59), the Alabama Court of Criminal Appeals affirmed, explaining that Mr. Rieber had not presented any evidence "indicating that the State permitted evidence to spoil." (Doc. 16-93 at 141–42).

The Alabama Court of Criminal Appeals' rejection of this claim on the merits was not unreasonable. That court based its rejection on a factual determination that Mr. Rieber had not proved the State permitted any evidence to spoil. (*Id.*). Mr. Rieber has not argued that this was an unreasonable determination in light of the evidence presented. (*See* doc. 1 at 42–44); *see* 28 U.S.C. § 2254(d)(2). Nor has he presented any evidence even attempting to rebut the state court's factual finding. (*See* doc. 1 at 42–44); *see* 28 U.S.C. § 2254(e)(1). To the extent Mr. Rieber means

66

to rely on his argument, made in connection with his ineffective assistance claims, that the evidence presented at the Rule 32 evidentiary hearing proves he was extremely intoxicated on the night of the murder, that argument fails here as it did in those other claims. *See supra* at 15–22. Given that Mr. Rieber has not made any attempt to challenge the factual basis for the state court's rejection of his claim, he cannot establish that he is entitled to habeas relief.

Even if he could establish that the State permitted evidence to spoil, Mr. Rieber has not established, under any standard of review, that the spoliation of evidence violated his due process or equal protection rights. Mr. Rieber bases his bad faith and equal protection claims on the United States Supreme Court's decision in *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58. But Mr. Rieber does not allege—either with specific factual support or in a conclusory manner—that the State acted in bad faith. (*See* doc. 1 at 42–44). He has therefore failed to satisfy the requirements of a due process claim under *Youngblood*. And although he conclusorily asserts that the same facts support a violation of his equal protection rights (*see id.* at 44), *Youngblood* does not speak to equal protection and

Mr. Rieber has not pointed to any cases relating to equal protection in the context of a State's spoliation of evidence. He is therefore not entitled to relief on this claim.

### 2.  Procedural Default

In addition to the claims that the State concedes were properly raised in Mr. Rieber's § 2254 petition, he also asserts some claims that the State challenges as procedurally defaulted. In federal habeas law, procedural default comes in two forms: (1) where the petitioner asserted the claim in state court but the state court rejected the claim based on a state procedural bar; and (2) where the petitioner failed to exhaust state remedies and a state procedural bar would now make exhaustion of the claim futile. *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). The State bears the burden of establishing a procedural default. *Gordon v. Nagle*, 2 F.3d 385, 388 n.4 (11th Cir. 1993).

The first type of procedural default arises from the requirement that a petitioner "must comply with all 'independent and adequate' state procedures." *Mason*, 605 F.3d at 1119 (11th Cir. 2010) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977)). If a state court rejects a petitioner's claim on independent and adequate state procedural grounds, the petitioner has procedurally defaulted the claim and the federal court may not consider the merits of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156–57 (11th Cir. 2010). A procedural ground is independent and

adequate if the state court "clearly and expressly state[d] that it [was] relying on state procedural rules to resolve the federal claim without reaching the merits of that claim," the state court's decision was not "intertwined with an interpretation of federal law," and the state procedural rule was not "applied in an arbitrary or unprecedented fashion." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

The second type of procedural default arises from the requirement that a petitioner exhaust all challenges to his conviction and sentence in state court before seeking relief in federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). To exhaust a claim, the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" and "fairly present[ing] every issue raised in his federal petition to the [S]tate's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (quotation marks and citations omitted). Typically, a failure to exhaust results in the dismissal of the claim without prejudice so that the petitioner can return to state court and exhaust the claim properly. *Gore v. Crews*, 720 F.3d 811, 815 (11th Cir. 2013). However, if a petitioner failed to exhaust a claim and "it is clear from state law that any future attempts at exhaustion would be futile,"

69

then the petitioner will never be able to satisfy the exhaustion requirement and the claim is procedurally defaulted. *Bailey*, 172 F.3d at 1305.

A petitioner may overcome a procedural default only if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012). To establish cause and prejudice, a petitioner must prove that "some objective factor external to the defense impeded counsel's efforts" to pursue the claim properly in state court, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), and that the "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness," *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To establish a fundamental miscarriage of justice with respect to a defaulted claim attacking a death sentence, the petitioner must "prove that, but for the alleged constitutional error, no reasonable juror would have found him eligible for the death penalty under [Alabama] law." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 958 (11th Cir. 2016) (quotation marks and emphasis omitted). The petitioner bears the burden of establishing an exception to a procedural default. *Gordon*, 2 F.2d at 388 n.4.

      *a.  Claim Two*

Mr. Rieber asserts that trial counsel provided ineffective assistance at the sentencing stage by failing to research and present to the sentencing court Alabama cases in which a defendant who engaged in worse conduct received a life sentence. (Doc. 1 at 11–13). He argues that presenting those cases would have shown how imposition of the death penalty was arbitrary and capricious. (*Id.*).

Mr. Rieber did not assert this claim in his amended Rule 32 petition. (*See* doc. 16-11 at 62–53; doc. 16-6 at 19–55). At the Rule 32 evidentiary hearing, Mr. Rieber submitted to the state habeas trial court a memorandum about the cases he contended trial counsel should have presented to the sentencing court. (Doc. 16-82 at 72–73; *see also id.* at 58). The court overruled an objection from the State and admitted the memorandum. (*Id.* at 73). Then, after the evidentiary hearing, Mr. Rieber filed a brief in which he argued that trial counsel was ineffective for failing to present cases with worse facts. (Doc. 16-27 at 38, 45–46, 71–73). The state habeas trial court's order denying Mr. Rieber's amended Rule 32 petition expressly addressed only the claims made in his amended Rule 32 petition, and therefore did not address this particular ineffective assistance claim. (*See* Doc. 16-31 at 49, 22–33).

On appeal, Mr. Rieber challenged the state habeas trial court's failure to address this claim. (Doc. 16-91 at 56). The Alabama Court of Criminal Appeals

concluded that, under Alabama law, he had not preserved the claim for review because he had not amended his Rule 32 petition to assert that claim. (Doc. 16-93 at 112–13). The Alabama Supreme Court denied Mr. Rieber a writ of certiorari without opinion. (Doc. 16-98 at 31). Because the Alabama Supreme Court's denial of certiorari does not explain its rationale, the court must "look through" to the Alabama Court of Criminal Appeals' opinion and presume that the Alabama Supreme Court adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The State contends that this claim is procedurally defaulted because Mr. Rieber did not raise it in his Rule 32 petition and the Alabama Court of Criminal Appeals found that Mr. Rieber had not properly preserved it. (Doc. 14 at 46). Although the State couches its procedural default defense as one of "exhaustion," it argues about the state courts' application of a state procedural bar. (*See id.*). The court will therefore address whether a procedural bar precludes federal review of this claim. *See, e.g.*, *Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 690–91 (11th Cir. 2020) (holding that the State adequately raised the procedural default defense despite the State's mischaracterization of the defense as a merits issue).[8]

---

[8] Although *Kimbrough* is an unpublished opinion, the court finds it persuasive. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060 (11th Cir. 2022).

Here, the Court of Criminal Appeals declined to address the merits of Mr. Rieber's claim because, under Alabama law, he did not properly preserve it by asserting the claim in his amended Rule 32 petition. (Doc. 16-93 at 112–13). The state court's statement that it was relying on a state procedural ground was clear and express. *See Judd*, 250 F.3d at 1313. It was also entirely independent of any interpretation of federal law. *Id.* Finally, the Court of Criminal Rules relied on longstanding precedent applying the same rule, so the application of the rule was not arbitrary or unprecedented. (*See* Doc. 16-93 at 113) (citing *Arrington v. State*, 716 So. 2d 237, 239 (Ala. Crim. App. 1997) (quoting *Cleveland v. State*, 570 So. 2d 855 (Ala Crim. App. 1990); *Morrison v. State*, 551 So. 2d 435 (Ala. Crim. App. 1990))); *see also Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1336–38 (11th Cir. 2012) (holding that Alabama's failure-to-preserve procedural bar is independent and adequate).

Mr. Rieber contends that because he presented this claim to the state habeas trial court and the state habeas trial court admitted his memorandum of cases, he did not need to amend his amended Rule 32 petition to formally assert the claim. (Doc. 1 at 13; Doc. 17 at 8–9). But "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). The Alabama Court of Criminal Appeals applied a state

law ground to bar consideration of the merits of the claim. Because that state law ground was "independent of the federal question and adequate to support the judgment," this court cannot review the merits of the claim. *Walker v. Martin*, 562 U.S. 307, 315 (2011). Mr. Rieber makes no argument with respect to any exceptions to the procedural default rule. (*See* Doc. 1 at 13; Doc. 17 at 9). Accordingly, the court finds that Claim Two is procedurally defaulted based on the state courts' application of an independent and adequate state procedural bar.

b.   *Claim Five*

Mr. Rieber contends that appellate counsel were ineffective for failing to challenge Alabama's capital sentencing scheme on six different constitutional grounds. (Doc. 1 at 25).

In his amended Rule 32 petition, Mr. Rieber argued that Alabama's capital sentencing scheme was unconstitutional on various grounds. (Doc. 16-11 at 51–53). Later in the petition, he asserted in two sentences that appellate counsel "improperly failed to raise on appeal numerous issues identified in other claims in this amended petition that trial counsel either failed to identify or failed to adequately pursue during the trial and sentencing phases of this case" and the "failure to raise the issues on appeal constituted a failure to provide petitioner with appellate representation he

was entitled to under the Alabama and United States Constitutions to equal protection of the laws and due process of law." (*Id.* at 64 ¶¶ 82–83).

The state habeas trial court denied this claim on the merits, stating that appellate counsel is presumed to exercise sound strategy in determining which claims to assert and that establishing prejudice requires the petitioner to show that the unpresented claim would have entitled him to relief. (Doc. 16-32 at 40–41). On appeal, Mr. Rieber argued that appellate counsel were ineffective based in part on the "arguments they abandoned," which he asserted, without further explanation, he had set out "in his briefing in support of his Rule 32 petition." (Doc. 16-91 at 73–74). The Alabama Court of Criminal Appeals agreed with the state habeas trial court, held that Alabama courts had repeatedly rejected challenges to the constitutionality of Alabama's capital sentencing scheme, and noted that Mr. Rieber had not presented the court with sufficient argument under Alabama Rule of Appellate Procedure 28(a)(10), which requires an appellant to include in the appellate brief a statement of the issues, argument, and citations to authority and the record. (Doc. 16-93 at 125).

The State contends that this claim is unexhausted because Mr. Rieber's poor briefing failed to "fairly present" the claim to the state courts. (Doc. 14 at 57–58). Although the State couches this argument as one of exhaustion, it is possible that the

75

State has again mischaracterized the procedural bar issue as one of exhaustion. The court will therefore address both types of procedural default.

With respect to exhaustion, the court finds that Mr. Rieber properly exhausted the claim. Although his Rule 32 petition was not well-briefed, the state habeas trial court understood the claim and ruled on its merits. (Doc. 16-31 at 40–41). It did so using the federal standard for ineffective assistance claims. (*Id.* at 63). The Alabama Court of Criminal Appeals did the same. (Doc. 16-93 at 114, 125).

The Eleventh Circuit has held that where the petitioner's federal due process claim was not clearly pleaded but the state courts decided the claim based on federal constitutional law, the petitioner properly exhausted the claim. *Sandstrom v. Butterworth*, 738 F.2d 1200, 1206 (11th Cir. 1984). The Eleventh Circuit explained that this rule vindicates the exhaustion requirement because the state court "not only had the opportunity to pass upon petitioner's claimed constitutional violation, it actually did so. . . . There is no better evidence of exhaustion than a state court's actual consideration of the relevant constitutional issue." *Id.* (citation and quotation marks omitted). The Eleventh Circuit has recently reiterated this holding, stating that "[e]ven though [the petitioner] didn't develop his . . . claim as well as he could have, we conclude that the claim is exhausted because the state habeas court had an opportunity to address [the] claim in the first instance when it rejected the merits of

76

his . . . claim." *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1365 n.15 (11th Cir. 2020) (quotation marks and one alteration omitted); *see also Holland v. Florida*, 775 F.3d 1294, 1316 (11th Cir. 2014) ("[T]he exhaustion requirement is satisfied if a claim is fairly presented to the state court that had an opportunity to apply controlling legal principles to the facts bearing upon it. The Florida Supreme Court had an opportunity to address [the petitioner's] claims in the first instance when it rejected the merits of his *Strickland* claim.") (citation and quotation marks omitted). Just as in those cases, Mr. Rieber presented his claim and the courts understood and addressed the merits of the claim. He therefore exhausted the claim.

The State may again be mischaracterizing its procedural default argument as one of exhaustion when in fact the issue is the Alabama Court of Criminal Appeals' application of a state procedural bar: Rule 28(a)(10), which sets out the expectations for an appellate brief. (*See* Doc. 14 at 57). Immediately after rejecting the merits of Mr. Rieber's claim, the Alabama Court of Criminal Appeals stated that because Mr. Rieber had not provided any factual support, legal authority, or argument about this claim, "he has failed to satisfy his duty to provide [the Court of Criminal Appeals] with a sufficient argument under Rule 28(a)(10)." (Doc. 16-93 at 125). The Eleventh Circuit has recently held that a petitioner's failure to comply with Rule 28(a)(10) results in a procedural default. *Ferguson v. Comm'r, Ala. Dep't of Corr.*,

77

69 F.4th 1243, 1259 (11th Cir. 2023). Accordingly, the court **WILL DENY** this claim as procedurally defaulted.

However, in the interest of completeness, the court will also address the merits of the claim. Mr. Rieber contends that appellate counsel were ineffective for failing to argue that (1) the Alabama capital sentencing statute was unconstitutionally vague, (2) the statute was unconstitutionally arbitrary, (3) the judicial override provision made the statute unconstitutional; (4) the effect of elected judges made the statute unconstitutional; (5) the statute "was unconstitutional as applied based on the stalking issue"; and (6) the methods of execution authorized were unconstitutional. (Doc. 1 at 25). He argues that because he is entitled to relief on each of these issues, counsel's failure to raise these issues on appeal was ineffective. (*Id.*).

Because the Alabama Court of Criminal Appeals rejected Mr. Rieber's claim based on a failure to establish prejudice (*see* doc. 16-93 at 125), the court will evaluate that decision using § 2254(d) deference. Of the six underlying constitutional arguments at issue in this ineffective assistance claim, the court has already discussed five (in Claims Six, Eight, and Nine) and explained that the state courts' rejection of those underlying claims on the merits was not unreasonable. Accordingly, it was also not unreasonable to find that Mr. Rieber failed to establish prejudice based on counsel's failure to raise those claims on appeal. *Brown*, 720 F.3d

at 1335 ("It is . . . crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim.").

The only underlying claim the court has not yet addressed is the vagueness challenge. This is because, as the court will discuss in the next section, Mr. Rieber procedurally defaulted the claim by failing to raise it at the appropriate stage in his state court proceedings. Nevertheless, the Alabama Court of Criminal Appeals also rejected this claim, in the alternative, on the merits. (*See* doc. 16-93 at 137). That rejection was not an unreasonable application of clearly established federal law.

A criminal statute is unconstitutionally vague if it does not define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and . . . in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (quotation marks omitted). Mr. Rieber contends that the heinous, atrocious, or cruel aggravator is unconstitutionally vague because ordinary people would not understand what it means, it encourages arbitrary enforcement, and the state trial judge in fact found the aggravator "with little explanation and based, at least in part, on an erroneous finding." (Doc. 1 at 35). The Alabama Court of Criminal Appeals explained that the heinous, atrocious, or cruel aggravator is not unconstitutionally vague. (Doc. 16-93 at 137). That was not an unreasonable application of clearly established federal law.

79

Mr. Rieber has offered no argument that would allow the court to find that it is an unreasonable application of clearly establish federal law to reject the contention that ordinary people would not understand the meaning of the phrase "especially heinous, atrocious, or cruel compared to other capital offenses." (*See* doc. 1 at 34–35; doc. 17 at 17–18). The *Skilling* case, on which he relies, did not find any similar aggravating factor in a death penalty statute unconstitutionally vague—in fact, it found the criminal statute at issue constitutional. *See* 561 U.S. at 412–13. Moreover, the court has already rejected Mr. Rieber's arbitrariness argument and his argument that the state sentencing court's finding was based on an error. In short, Mr. Rieber has not carried his burden of establishing that the Alabama Court of Criminal Appeals' rejection of this constitutional challenge to the statute was unreasonable. As a result, he cannot establish that the Alabama Court of Criminal Appeals' prejudice finding was unreasonable.

Even if Mr. Rieber could establish that the state court's prejudice finding was unreasonable, he would also have to establish deficient performance to prevail. The Alabama Court of Criminal Appeals' decision rested entirely on the prejudice prong. (*See id.*). Accordingly, the court will evaluate the deficient performance prong *de novo*. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) ("Because the state court did

80

not decide whether [the petitioner]'s counsel was deficient, we review this element of [the] *Strickland* claim *de novo*.").

"[A] criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal." *Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). "[G]ood advocacy requires winnowing out some arguments . . . to stress others." *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (quotation marks omitted). To overcome the presumption of competent representation, the petitioner must "establish that no competent counsel would have taken the action that his counsel did take." *Id.*

Even assuming that the six underlying constitutional challenges to Alabama's sentencing statute had merit, appellate counsel asserted other claims that the state courts found strong. *See, e.g.*, *Rieber I*, 663 So. 2d at 987–90 (discussing at length a Fourth Amendment suppression issue); *Rieber II*, 663 So. 2d at 1002–03 (discussing the same Fourth Amendment suppression issue); *id.* at 1005–07 (discussing the impact of improperly admitted victim impact evidence presented to the jury during the guilt phase and the propriety of victim impact evidence presented to the trial

judge during the judicial penalty phase proceeding). Mr. Rieber has not established that no competent attorney could have made the strategic decision to omit these six arguments and focus on the arguments actually asserted, in an effort to preserve the persuasive value and strength of those arguments. *See Strickland*, 466 U.S. at 690 (holding that courts "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment"). Accordingly, he cannot establish deficient performance, and this claim must fail.

### c. Claim Seven

Mr. Rieber asserts that Alabama's capital sentencing scheme is unconstitutionally vague because it fails to adequately define the aggravating circumstances that can make a crime death-eligible.[9] (Doc. 1 at 34–35).

Mr. Rieber asserted this claim for the first time in his amended Rule 32 petition. (Doc. 16-11 at 51). The state habeas trial court denied the claim as

---

[9] This court has already addressed the merits of this claim in the preceding section, where Mr. Rieber argued that appellate counsel was ineffective for failing to raise this claim in his direct appeal. Although, as the court will address in this section, the underlying claim (that the statute is unconstitutionally vague) is procedurally defaulted, the ineffective assistance claim is properly before this court. And to address the ineffective assistance claim, the court had to take up the merits of the claim that appellate counsel omitted—this claim. That is why, although Mr. Rieber defaulted this constitutional challenge, the court has addressed the claim on the merits. Nevertheless, in the interest of the completeness and accuracy, the court also conducts the procedural default analysis for this claim.

procedurally barred under Alabama Rule of Criminal Procedure 32.2(a)(5) because he could have raised it in his direct appeal but he failed to do so. (Doc. 16-31 at 50–51). The Alabama Court of Criminal Appeals adopted the trial court's ruling and added, in the alternative, that the claim was meritless. (Doc. 16-93 at 137).

The State contends that this claim is procedurally defaulted based on the state courts' application of the state procedural ground. (Doc. 14 at 78–79). This court agrees. The Eleventh Circuit has "squarely held that claims barred under Rule 32.2(a)(3) and (a)(5) are procedurally defaulted from federal habeas review." *Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1335 (11th Cir. 2012).

Mr. Rieber contends that trial and appellate counsel's failure to challenge the vagueness of the statute should excuse the procedural default. (Doc. 17 at 18). In general, a petitioner must present a claim of ineffective assistance "to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489 (1986). Here, Mr. Rieber did not exhaust a claim that trial counsel was ineffective for failing to challenge the constitutionality of the statute. Accordingly, a claim of ineffective assistance of trial counsel for failing to challenge the constitutionality of the statute cannot suffice to establish cause and prejudice.

However, as discussed above, Mr. Rieber did exhaust his claim that *appellate* counsel was ineffective for failing to challenge the constitutionality of the statute. If that ineffective assistance claim were meritorious, it might serve as cause excusing the procedural default. But as discussed above, the claim is meritless. Accordingly, it cannot excuse the default of the substantive claim. *See Murray*, 477 U.S. 478, 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial.").

The court notes Mr. Rieber's conclusory statement that "[b]inding [him] to the missteps of his ineffective counsel would be a fundamental miscarriage of justice." (Doc. 17 at 18). Although Mr. Rieber uses the phrase "miscarriage of justice," this is the same cause and prejudice argument that the court has already rejected. It does not suffice to establish that prove that "no reasonable juror would have found him eligible for the death penalty under [Alabama] law," which is the standard for establishing a miscarriage of justice that would excuse a procedural default. *Raleigh*, 827 F.3d at 958.

## III. DISCOVERY AND EVIDENTIARY HEARING

Mr. Rieber requests an evidentiary hearing and permission to seek discovery. (Doc. 1 at 45). "A habeas petitioner, unlike the usual civil litigant in federal court, is

84

not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Instead, the court may authorize discovery if the party requesting discovery establishes good cause. Rules Governing Section 2254 Cases, R. 6(a)–(b); *Isaacs v. Head*, 300 F.3d 1232, 1248 (11th Cir. 2002). And a court is not required to hold an evidentiary hearing, but may do so in its discretion if "such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Because it is clear from the record that Mr. Rieber cannot prevail on his § 2254 petition, neither discovery nor an evidentiary hearing is unnecessary. The court therefore **DENIES** the requests for discovery and an evidentiary hearing.

## IV.   CONCLUSION

The court **DENIES** Mr. Rieber's motions for discovery and an evidentiary hearing.

The court **WILL DISMISS** Mr. Rieber's method-of-execution claim as improperly asserted in this § 2254 petition. The court **WILL DENY** the remainder of Mr. Rieber's petition. When the court enters a final order adverse to the petitioner, the court must also either grant or deny a certificate of appealability. Rules Governing Section 2254 Cases, R. 11(a).  This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 336 (internal quotation marks omitted). Because reasonable jurists could not debate the merits of any of Mr. Rieber's claims, the court **WILL DENY** a certificate of appealability.

The court will enter a separate final judgment consistent with this opinion.

**DONE** and **ORDERED** this August 7, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE