No. 23-13958-P

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

DEATH PENALTY CASE

---

JEFFERY DAY RIEBER,

Petitioner-Appellant,

v.

JOHN HAMM,
COMMISSIONER OF THE ALABAMA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

---

Appeal From The United States District Court For
The Northern District of Alabama
Case No. 5:18-cv-00337-ACA
Honorable Judge Annemarie Carney Axon

---

BRIEF OF PETITIONER-APPELLANT

---

James A. Friedman
GODFREY & KAHN, S.C.
One East Main Street
Ste. 500
Madison, WI 53703
Phone: (608) 257-3911
Email: jfriedman@gklaw.com

Emma J. Jewell
GODFREY & KAHN, S.C.
833 East Michigan Street
Ste. 1800
Milwaukee, WI 53202
Phone: (414) 287-9616
Email: ejewell@gklaw.com

May 13, 2024

*Attorneys for Jeffery Day Rieber*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Undersigned counsel certifies the following persons may have an interest in the outcome of this case:

Axon, Honorable Annemarie Carney – United States District Judge Northern District of Alabama;

Bensky, Lawrence – former counsel for Jeffery Day Rieber, Petitioner-Appellant, in the state post-conviction proceedings and habeas corpus petition to the Northern District of Alabama; retired;

Blankenship, Honorable Jeri, Madison County Circuit Court Judge; deceased;

Chadbourne, James, former Madison County Assistant District Attorney;

Craig, Glenda – victim;

Dunn, Jefferson S. – former Commissioner of the Alabama Department of Corrections, Respondent;

Equal Justice Initiative;

Evans, James – former Alabama Attorney General;

Friedman, James A. – counsel for Jeffery Day Rieber, Petitioner-Appellant; attorney at Godfrey & Kahn, S.C.;

Gabrielson, Kerry L. – former attorney at Godfrey & Kahn, S.C. and counsel for Jeffery Day Rieber, Petitioner-Appellant, in the state post-conviction proceedings and habeas corpus petition to the Northern District of Alabama;

Galbraith, Tina A. – former counsel for Jeffery Day Rieber, Petitioner-Appellant, in the post-conviction proceedings; former attorney at King & Spalding in Atlanta Georgia;

Godfrey & Kahn, S.C., counsel for Jeffery Day Rieber, Petitioner-Appellant;

Hall, Honorable Karen K. – Madison County Circuit Court Judge;

Hamilton, Honorable Laura Jo – retired Madison County Circuit Court Judge;

Hamm, John Q. – Commissioner of the Alabama Department of Corrections, Respondent;

Hayden, Jon B. – former Assistant Attorney General;

Hill, Anne Adams – former Assistant Attorney General;

Houts, James R. – former Assistant Attorney General;

Hughes, Beth Jackson – Assistant Deputy Attorney General;

Jewell, J. Emma – counsel for Jeffery Day Rieber, Petitioner-Appellant; attorney at Godfrey & Kahn, S.C.;

Kempaner, Richard A. – trial counsel and counsel on the direct appeal for Jeffery Day Rieber, Petitioner-Appellant;

King, Troy – former Assistant Attorney General;

King & Spalding, former counsel for Jeffery Day Rieber, Petitioner-Appellant;

Law Office of Lawrence Bensky, LLC, former counsel for Jeffery Day Rieber, Petitioner-Appellant;

Marshall, Steve – Attorney General;

Moran, Dan – trial counsel for Jeffery Day Rieber, Petitioner-Appellant, and counsel on the direct appeal;

Morgan, Timothy W. – former District Attorney of Madison County;

Narvey, Daniel C.W. – former attorney at Godfrey & Kahn, S.C., former counsel for Jeffery Day Rieber, Petitioner-Appellant;

Poe, Beth Slate – former Assistant Deputy Attorney General;

Pryor, William – former Assistant Attorney General and former Attorney General;

Raybon, Terry – Warden of Holman Correctional Facility;

Sess, Elizabeth – Assistant Attorney General;

Sessions, Jeff – former Alabama Attorney General;

Simpson, Lauren A. – Assistant Attorney General;

Stafford Rosenbaum LLP, former counsel for Jeffery Day Rieber, Petitioner-Appellant;

Stephens, Michelle Riley – former Assistant Attorney General;

Stevenson, Bryan A – counsel for Jeffery Day Rieber, Petitioner-Appellant on direct Appeal to the Alabama Court of Criminal Appeals and Alabama Supreme Court;

Thomas, Kim T. – former Commissioner of the Alabama Department of Corrections;

Tuerkheimer, Frank M. – former counsel for Jeffery Day Rieber, Petitioner-Appellant, in the state post-conviction proceedings and the habeas corpus petition to the Northern District of Alabama; deceased;

Wiesner, Ellen L., A – counsel for Jeffery Day Rieber, Petitioner-Appellant on direct Appeal to the Alabama Court of Criminal Appeals and Alabama Supreme Court.

* * *

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner-Appellant Jeffery Rieber respectfully requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules.

<u>**TABLE OF CONTENTS**</u>

STATEMENT REGARDING ORAL ARGUMENT ..................................... i

TABLE OF AUTHORITIES ....................................................... iv

STATEMENT OF JURISDICTION ............................................. 1

STATEMENT OF THE ISSUES ................................................ 2

STATEMENT OF THE CASE ................................................... 2

    A. Course of Proceedings ................................................ 2

    B. Statement of Facts ..................................................... 9

        i.  Aware That An Alibi Defense Was Unlikely To
            Succeed, Attorney Kempaner Failed To Fully Pursue
            The Viable Alternative Of A Voluntary Intoxication
            Defense. ................................................................ 10

        ii.  Sentencing Counsel Failed To Present Corroborating
            Mitigating Evidence That Mr. Rieber Was Intoxicated
            At The Time Of The Offense. ................................. 13

        iii. The Rule 32 Post-Conviction Hearing Revealed
            Substantial Evidence Of Mr. Rieber's Extensive Drug
            Use, Which Corroborated The Voluntary Intoxication
            Defense And Mitigated Imposition Of The Death
            Penalty. ............................................................... 15

    C. Standard of Review ................................................... 20

SUMMARY OF THE ARGUMENT ........................................ 21

ARGUMENT ............................................................................ 23

I.    TRIAL COUNSEL RENDERED INEFFECTIVE
     ASSISTANCE AT THE GUILT PHASE BY NOT
     PURSUING A THEORY THAT MR. RIEBER LACKED THE
     REQUISITE INTENT FOR CAPITAL MURDER. ...................... 23

A. Counsel's failure To Fully Pursue The Viable Alternative Of A Voluntary Intoxication Defense Was Deficient Performance. ....................................................................................23

B. Counsel's Deficient Performance Prejudiced Mr. Rieber Because Evidence Of Mr. Rieber's Intoxication Created A Reasonable Doubt As To The Element Of Intent, Which Would Have Resulted In A Conviction On The Lesser Included Offense Of Manslaughter – A Crime Not Punishable By Death. ..............................................................27

II. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT THE PENALTY PHASE BY NOT PRESENTING MITIGATING EVIDENCE OF MR. RIEBER'S INTOXICATION AT THE TIME OF THE OFFENSE. ........................................................................29

A. Counsel's Failure To Adequately Investigate And Present Mitigating Evidence Was Deficient Performance. ....................29

B. Counsel's Deficient Performance Prejudiced Mr. Rieber Because Had Counsel Presented The Mitigating Evidence Available To Him, Mr. Rieber Would Not Have Been Sentenced To Death. ..............................................................31

CONCLUSION ..........................................................................36

CERTIFICATE OF COMPLIANCE ......................................37

CERTIFICATE OF SERVICE................................................38

# TABLE OF AUTHORITIES

## CASES

*Beck v. Alabama,*
   447 U.S. 625 (1980) ................................................................ 12

*Boyd v. Allen,*
   592 F.3d 1274 (11th Cir. 2010) ............................................. 20

*Brownlee v. Haley,*
   306 F.3d 1043 (11th Cir. 2002) ............................................. 32

*Bush v. Singletary,*
   988 F.2d 1082 (11th Cir. 1993) ............................................. 31

*Chambers v. Mississippi,*
   410 U.S. 284 (1973) ................................................................ 16

*Coon v. State,*
   494 So. 2d 184 (Ala. Crim. App. 1986) ................................. 12

*Ex parte Kyzer,*
   399 So. 2d 330 (Ala. 1981) ..................................................... 12

*Ex parte Kuenzel,*
   577 So. 2d 531 (Ala. 1991) ..................................................... 27

*Ex parte Parker,*
   610 So. 2d 1181 (Ala. 1992) ................................................... 27

*Ex parte Rieber,*
   663 So. 2d 999 (Ala. 1995) ....................................................... 3

*Fletcher v. State,*
   621 So. 2d 1010 (Ala. Crim. App. 1993) ......................... 12, 26

*Gamble v. Sec'y, Fla. Dep't of Corr.,*
   450 F.3d 1245 (11th Cir. 2006) ............................................. 20

*Hinton v. Alabama,*
   571 U.S. 263 (2014) .......................................................... 24, 27

*Kuenzel v. State*,
577 So. 2d 474 (Ala. Crim. App. 1990)................................27

*Lawhorn v. Allen*,
519 F.3d 1272 (11th Cir. 2008) ...........................................24

*Lockett v. Ohio*,
438 U.S. 586 (1978) .............................................................29

*Melson v. Allen*,
548 F.3d 993 (11th Cir. 2008) .............................................20

*Owen v. State*,
611 So. 2d 1126 (Ala. Crim. App. 1992)..............................26

*Parker v. State*,
587 So. 2d 1072 (Ala. Crim. App. 1991)..............................27

*Porter v. McCollum*,
558 U.S. 30 (2009) ...............................................................30

*Rieber v. State*,
663 So. 2d 985 (Ala. Crim. App. 1994)..................................3

*Rieber v. State*,
No. CR-15-0355, (Ala. Crim. App. Aug. 31, 2017)................5

*Rompilla v. Beard*,
545 U.S. 374 (2005) .............................................................30

*Silvey v. State*,
485 So. 2d 790 (Ala. Crim. App. 1986)................................27

*Strickland v. Washington*,
466 U.S. 668 (1984) ...........................................23, 24, 27, 32

*Wiggins v. Smith*,
539 U.S. 510 (2003) ...........................................23, 29, 30, 31

*Williams v. Taylor*,
529 U.S. 362 (2000) .............................................................30

# STATUTES

28 U.S.C. § 2241(d) ....................................................................... 1

28 U.S.C. § 2254 ............................................................................ 1

28 U.S.C. § 2254(d) ..................................................................... 20

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1294(1) ....................................................................... 1

28 U.S.C. § 2253(a) ....................................................................... 1

Ala. Code § 13A-5-46 .................................................................... 3

Ala. Code § 13A-5-51(2) .............................................................. 33

Ala. Code § 13A-5-51(6) .............................................................. 34

Ala. Code § 13A-5-6(a)(2) (1994) ............................................... 28

# RULES

11th Cir. R. 22-2 ......................................................................... 37

Alabama Rule of Criminal Procedure 32 ............................... 3, 31

Fed. R. App. P. 32(a)(5) .............................................................. 37

Fed. R. App. P. 32(a)(6) .............................................................. 37

Fed. R. App. P. 32(a)(7)(B) ........................................................ 37

Fed. R. App. P. 32(f) ................................................................... 37

Fed. R. App. P. 34(a)(1) ................................................................ i

Federal Rule of Civil Procedure 59(e) ....................................... 1

Rule 28-1(c) of the Eleventh Circuit Rules .................................. i

## STATEMENT OF JURISDICTION

Jurisdiction for this habeas corpus proceeding was proper in the United States District Court for the Northern District of Alabama under 28 U.S.C. § 2254, because it was the district where Mr. Rieber was convicted and sentenced. *See* 28 U.S.C. § 2241(d). The district court entered a final judgment, denying Mr. Rieber's habeas petition on August 7, 2023. Mr. Rieber timely filed a motion to alter judgment under Federal Rule of Civil Procedure 59(e) on August 31, 2023, which the district court denied on October 31, 2023. On November 22, 2023, Mr. Rieber filed a timely notice of appeal. This Court granted Mr. Rieber a Certificate of Appealability on April 3, 2024. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291, 1294(1), and 2253(a).

## STATEMENT OF THE ISSUES

1. Whether trial counsel rendered ineffective assistance at the guilt phase by not pursuing a theory that Mr. Rieber lacked the requisite intent for intentional homicide.

2. Whether trial counsel rendered ineffective assistance at the penalty phase by not presenting evidence of Mr. Rieber's intoxication at the time of the offense.

## STATEMENT OF THE CASE

This is a habeas corpus case in which the death penalty has been imposed. Jefferey Rieber is incarcerated on death row at Holman Correctional Facility in Atmore, Alabama.

### A.    Course of Proceedings

On April 10, 1992, Mr. Rieber was convicted of murder committed in the course of a robbery, a capital offense under Alabama law. (Doc. 16-78 at 41-42.)[1] The next day, following the penalty phase hearing to the jury, the jury recommended, by a vote of seven to five, that Mr. Rieber be sentenced to life imprisonment without parole. (Doc. 16-

---

[1] The page numbers in the record on appeal and the reporter transcripts refer to the district court document number and the page numbers refer to the page numbers that appear on the header generated by the electronic filing system.

85 at 97-100.) On June 26, 1992, the Hon. Jeri Blankenship overrode the jury's recommendation, pursuant to former Ala. Code § 13A-5-46, and sentenced Mr. Rieber to death by electrocution. (Doc. 16-79 at 94.)

Mr. Rieber moved for a new trial and resentencing, but his motion was denied on August 25, 1992. (Doc. 16-85 at 190.) The Alabama Court of Criminal Appeals subsequently affirmed Mr. Rieber's conviction and death sentence, and it denied rehearing. *Rieber v. State*, 663 So. 2d 985 (Ala. Crim. App. 1994). The Alabama Supreme Court also affirmed, in *Ex parte Rieber*, 663 So. 2d 999 (Ala. 1995), and denied rehearing on June 23, 1995. Mr. Rieber timely filed a petition for a writ of certiorari to the United States Supreme Court, but the Court denied his petition on November 27, 1995.

On February 24, 1997, Mr. Rieber filed a pro se petition for post-conviction relief in Madison County Circuit Court, under Alabama Rule of Criminal Procedure 32, seeking to set aside his conviction and death sentence. Mr. Rieber filed an amended Rule 32 petition, with the assistance of counsel, on January 26, 2004. (Doc. 16-11 at 41-66.) In the Rule 32 petition, Mr. Rieber asserted ineffective assistance of counsel

claims, among others, based on his trial counsel's deficient performance at both the guilt and penalty phases.

With respect to the guilt phase, Mr. Rieber argued, among other things, that his trial counsel failed to conduct a minimally effective investigation of the facts, including Mr. Rieber's excessive drug use on the day of the offense (as well as his history of drug use). (Doc. 16-11 at 60, ¶ 62.) Mr. Rieber further argued that his counsel failed to conduct a minimally effective investigation into the law, specifically the legal standards and requirements for submission of lesser-included offenses. (*Id.*) Had counsel conducted such an investigation, counsel would have appreciated that Mr. Rieber could not have formed the intent required for the charges against him. (*Id.* ¶ 63.) And, had counsel conducted the most basic legal research, counsel would have presented to Mr. Rieber the option of asking for a jury instruction on the lesser included charge of manslaughter – an offense that did not require the mental state necessary for the capital murder charge on which Mr. Rieber was convicted. (*Id.*)

As to the penalty phase, Mr. Rieber argued that trial counsel's failure to investigate Mr. Rieber's troubled past, extensive drug abuse

background, as well as his drug abuse on the date in question, resulted in counsel's failure to present the mitigating circumstance of impairment due to drug use at sentencing. (Doc. 16-11 at 63, ¶ 76.)

The arguments in Mr. Rieber's post-conviction motion were presented to the trial court at an evidentiary hearing held on October 3-5, 2011, before the Hon. Laura Jo Hamilton (Judge Blankenship had passed away). The evidentiary hearing revealed just how prejudicial trial counsel's failures were as there was substantial evidence presented of Mr. Rieber's extensive drug use, which not only corroborated a voluntary intoxication defense, but also mitigated imposition of the death penalty.

Judge Hamilton retired following the Rule 32 hearing, and the case was reassigned to the Hon. Karen Hall. On November 13, 2015, Judge Hall denied Mr. Rieber's Rule 32 petition based on the 2011 hearing record. (Doc. 16-32 at 41.) The Alabama Court of Criminal Appeals affirmed the denial of Mr. Rieber's Rule 32 petition on September 1, 2017, and denied rehearing. *Rieber v. State*, No. CR-15-0355, (Ala. Crim. App. Aug. 31, 2017). On February 2, 2018, the Alabama Supreme Court denied Mr. Rieber's petition for writ of

certiorari. The U.S. Supreme Court subsequently denied Mr. Rieber's petition for a writ of certiorari.

The Alabama courts rejected evidence from the Rule 32 hearing of Mr. Rieber's drug use during the day of the crime, finding that it took place "at some time of the day of the offense" and that this "would not have proven that he was intoxicated at the time of the offense," at approximately 8:00 p.m. (Doc. 16-32 at 6.) This finding is not only ambiguous, but also not accurate as the evidence presented clearly demonstrated that Mr. Rieber's drug use took place "at dusk," just an hour or two before the crime.

Mr. Rieber filed a petition for a writ of habeas corpus in the Northern District of Alabama on March 2, 2018. (Doc. 1.) Mr. Rieber raised eleven claims in the petition, including the ineffective assistance of counsel claims that are the subject of this appeal. On August 7, 2023, the Northern District of Alabama issued a memorandum opinion and order dismissing Mr. Rieber's petition and declining to issue a certificate of appealability. (Doc. 19.)

The district court deferred to the Alabama Court of Criminal Appeal's (ACCA's) decision that trial counsel made a strategic decision

to focus on a mistaken identity defense, as opposed to a voluntary intoxication defense, and the evidence presented at the Rule 32 hearing would not have entitled Mr. Rieber to a lesser-included offense manslaughter instruction based on voluntary intoxication. (Doc. 19 at 17-22.) The district court concluded, "[t]here is no dispute that trial counsel did not investigate the voluntary intoxication defense beyond reading [the State Psychologist's] report and briefly discussing Mr. Rieber's drug use with some of his family members" (*id.* at 19); yet, the district court determined the ACCA reasonably found that level of investigation to be reasonable. (*Id.* at 21-22.)

The district court also deferred to the ACCA's decision that at the penalty phase, counsel introduced as much mitigating evidence regarding Mr. Rieber's background as was available to him. (*Id.* at 26.) The district court further concluded the evidence presented at the Rule 32 hearing corroborated the state doctor's report as to Mr. Rieber's history of drug use and that Mr. Rieber had consumed hard drugs and alcohol the day of the crime. (*Id.* at 28.) Despite this evidence, the district court found the evidence *did not* corroborate Mr. Rieber's claim that he was intoxicated at the time of the crime. (*Id.*) The district court

concluded that the mitigating evidence counsel failed to present was weak compared to the aggravating factors and, therefore, the ACCA reasonably determined that there was no prejudice to Mr. Rieber. (Doc. 19 at 30-31.)

On August 31, 2023, Mr. Rieber filed a motion to alter or amend the district court's judgment denying his petition and denying a certificate of appealability. (Doc. 21.) The district court denied his motion on October 31, 2023. (Doc. 26.) On November 22, 2023, Mr. Rieber filed a notice of appeal. (Doc. 27.) Mr. Rieber filed a motion for a certificate of appealability on January 16, 2024. (11th Cir. Doc. 15.)

On April 3, 2024, this Court granted Mr. Rieber's motion for a certificate of appealability on two claims: (1) whether trial counsel rendered ineffective assistance at the guilt phase by not pursuing a theory that Mr. Rieber lacked the requisite intent for intentional homicide, and (2) whether trial counsel rendered ineffective assistance at the penalty phase by not presenting evidence of Mr. Rieber's intoxication at the time of the offence. (11th Cir. Doc. 18-1 at 2.)[2]

_____

[2] Mr. Rieber hereby reserves his right to raise his other claims in future proceedings.

## B.     Statement of Facts

Mr. Rieber was arrested on October 10, 1990, in connection with a convenience store robbery and homicide that occurred the night before. He was subsequently charged with murder committed in the course of a robbery, a capital offense. At the guilt phase of his trial, Mr. Rieber was represented by attorney Richard Kempaner.

When he accepted the case, Mr. Kempaner acknowledged that the evidence against Mr. Rieber was strong: the convenience store had recorded a video of the crime showing the perpetrator; a person who knew Mr. Rieber testified that he saw Mr. Rieber in the convenience store earlier that day and identified Mr. Rieber in the video; and hours after the crime, police seized from Mr. Rieber's residence clothing similar to that worn by the perpetrator in the video, cash, and the gun allegedly used in the robbery. (*See* Doc. 16-83 at 47; 16-34 at 22; 16-74 at 45-47; 16-75 at 12-17.) Mr. Kempaner wanted Mr. Rieber's mother to encourage her son to accept a plea agreement for life imprisonment, and Mr. Kempaner advised Mr. Rieber's mother that if Mr. Rieber rejected the offer, Mr. Kempaner would see her at her son's funeral. (Doc. 16-83

at 11.) Mr. Kempaner openly admitted that he accepted Mr. Rieber's case for the publicity it would yield. (Doc. 16-82 at 202.)

### i. Aware That An Alibi Defense Was Unlikely To Succeed, Attorney Kempaner Failed To Fully Pursue The Viable Alternative Of A Voluntary Intoxication Defense.

Despite overwhelming evidence to the contrary, Mr. Kempaner opted to pursue an alibi defense at trial. Mr. Kempaner argued that Mr. Rieber was at his job too late in the afternoon to have committed the crime. (Doc. 16-73 at 52-53.) But this defense was easily undercut by time records from Mr. Rieber's employer, which were available to the prosecution and which showed that Mr. Rieber left his job early in the afternoon on the day of the crime. (Doc. 16-77 at 45-46.) The State, therefore, readily rebutted the alibi defense at trial. (*Id.*) But there was another defense available to Mr. Rieber – lack of the requisite intent for intentional homicide.

Before trial, Mr. Kempaner had successfully moved to have a state psychologist, Dr. Kathy Rogers, examine Mr. Rieber. (Doc. 16-83 at 12; Doc. 16-85 at 43.) Mr. Rieber told Dr. Rogers that he completely blacked out from drug use—having consumed many different drugs and alcohol in the period just before the crime—and had no recollection of the

events of October 9, 1990. (Doc. 16-83 at 13; Doc. 16-86 at 130-132.)
Specifically, Mr. Rieber reported drinking numerous alcoholic
beverages, smoking marijuana, and using multiple hits of "acid" prior to
the crime. (Doc. 16-86 at 135.) Mr. Rieber also reported to Dr. Rogers
that he began using drugs at age nine. (Doc. 16-86 at 129.) Despite Dr.
Rogers' awareness of Mr. Rieber's incentive to fabricate a blackout
story, she nevertheless concluded in her report that, in her medical
judgment, Mr. Rieber's reported lack of memory was more likely related
to substance abuse than misrepresentation. (Doc. 16-83 at 13; Doc. 16-
86 at 132-135.)

Dr. Rogers' report provided Mr. Kempaner with an alternative to
the alibi defense, allowing him to argue a lack of intent based on
voluntary intoxication, which would mandate a manslaughter—not
intentional homicide—conviction. If the State's psychologist believed
Mr. Rieber, then it is likely a jury would find reasonable doubt as to the
intent element of the crime charged. This voluntary intoxication defense
posed a vastly superior alternative to the admittedly doomed alibi
strategy. The voluntary intoxication defense also neutralized the video
and seized evidence that were the core of the prosecution's case. But

Mr. Kempaner never even asked Mr. Rieber about the facts Mr. Rieber relayed to Dr. Rogers or the conclusions in her report. (Doc. 16-83 at 13-14, 38-39.)

Case law also validated the basis for a lesser included manslaughter charge, but Mr. Kempaner later testified that he did not pursue the lesser included offense because, despite clear authority supporting the defense, he did not "believe" that voluntary intoxication could be the basis for a lesser included charge. (Doc. 16-83 at 32-33.) Mr. Kempaner admitted he was unsure whether self-induced intoxication could be a viable defense. (*Id.*) Mr. Kempaner's belief was completely at odds with Alabama law and U.S. Supreme Court precedent. *See Beck v. Alabama*, 447 U.S. 625 (1980); *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981); *Fletcher v. State*, 621 So. 2d 1010 (Ala. Crim. App. 1993); *Coon v. State*, 494 So. 2d 184 (Ala. Crim. App. 1986) (each supporting the legal basis for the lesser included manslaughter charge).

In sum, Mr. Kempaner did *nothing* to follow the road map laid out by the Rogers report.

### ii. Sentencing Counsel Failed To Present Corroborating Mitigating Evidence That Mr. Rieber Was Intoxicated At The Time Of The Offense.

Before trial, Mr. Kempaner had successfully moved to have attorney Dan Moran appointed to help "develop mitigating evidence" relevant to the penalty phase. (Doc. 16-85 at 46-48.)

At the penalty phase of the case, before the jury, Mr. Moran called several witnesses who testified that Mr. Rieber was a "good" person. (Doc. 16-78 at 61-62, 72, 78.) But as to Mr. Rieber's *admitted* drug use just before the crime, troublesome family background, and extensive period of increasingly severe drug use, Mr. Moran relied exclusively on the report from Dr. Rogers. He literally offered nothing else. (Doc. 16-79 at 110-111.) The prosecution, unsurprisingly, fiercely attacked Mr. Rieber's statements in the Rogers report as fabricated (*see, e.g.*, Doc. 16-79 at 8-9), putting Mr. Moran on clear notice that the State would attack the Rogers report at sentencing.

Yet, despite this clear notice, Mr. Moran did nothing to bolster Mr. Rieber's case against imposition of the death penalty between the penalty phase before the jury and the sentencing hearing before Judge Blankenship. (Doc. 16-33 at 6, 8, 10.) In fact, Mr. Moran's time sheets,

including his worksheets for final submission, show that he meticulously noted his time, to the tenth of an hour, and that he did absolutely no work whatsoever between the date of the jury verdict and recommendation of life without parole and the date of the sentencing hearing before Judge Blankenship, despite the clear position of the State that the Rogers report was in need of corroboration – and despite the fact that his final submitted fee request was still below the maximum amount allowed by the State at the time. (*Id.*)

In the resentencing motion, Mr. Moran again cited the Rogers report to which Judge Blankenship asked Mr. Moran, point-blank, whether there was any evidence corroborating the report. Mr. Moran answered that there was nothing in the record to corroborate the report. (Doc. 16-79 at 109-111.) The statement was true as to the record that existed at the time, but as postconviction proceedings demonstrated, there was a plethora of evidence corroborating the Rogers report that Mr. Moran had made no effort to find or develop.

### iii. The Rule 32 Post-Conviction Hearing Revealed Substantial Evidence Of Mr. Rieber's Extensive Drug Use, Which Corroborated The Voluntary Intoxication Defense And Mitigated Imposition Of The Death Penalty.

The post-conviction hearing conducted on October 3-5, 2011, more than 20 years after the crime, revealed substantial corroborating evidence for the alternative defense Mr. Kempaner never pursued as well as mitigating evidence warranting against imposition of the death penalty. At the hearing, several witnesses testified as to Mr. Rieber's use of LSD, crystal meth, pot (marijuana), and alcohol at a party on the day of the crime. (Doc. 16-83 at 66-69, 73-75, 96.) This party began around 3:30 p.m. on the day of the crime, and Mr. Rieber was seen at the party several hours later (around "dusk") to be consuming drugs. (Doc. 16-83 at 65-67.)

Additional evidence presented at the Rule 32 hearing showed that the October 9, 1990 drug fest was not unusual for Mr. Rieber and, in fact, similar types of drug parties were held three to four times a week at the house of one of Mr. Rieber's friends, and Mr. Rieber attended regularly. (Doc. 16-83 at 64-66.) Mr. Rieber's siblings confirmed at the Rule 32 hearing that Mr. Rieber's drug consumption began at age nine with marijuana brought home by his mother. (Doc. 16-82 at 96-97, 111-

112.) When Mr. Rieber's parents separated, and he lived with his father in Alabama, his mother mailed marijuana to him from Michigan. (Doc. 16-82 at 135.) Mr. Rieber's siblings and others testified as to how Mr. Rieber's drug use escalated as he got older. For example, as a teenager, Mr. Rieber descended from marijuana use to harder drugs like LSD, cocaine, and crystal meth, along with marijuana and alcohol. (Doc. 16-82 at 116-118.) Drugs became the staple of Mr. Rieber's life, and he was discharged from the military because of his drug dependency. (Doc. 16-83 at 51-52; Doc. 16-80 at 11-21.) When he returned home after discharge, he began attending the regular drug parties, often at Jo Duffy's house, a friend who was slightly older. (Doc. 16-83 at 62-65.) The last of such drug parties took place immediately before the crime on October 9, 1990.[3]

Jo Duffy testified at the Rule 32 hearing about the "parties" she hosted that Mr. Rieber attended, explaining that Mr. Rieber regularly

---

[3] Judge Hamilton ruled that to show prejudice from Mr. Kempaner's failure to pursue the lesser included offense, only evidence of the October 9, 1990 drug party was admissible, not the other parties Mr. Rieber regularly attended. This ruling was incorrect. The other parties were admissible as similar acts showing a pattern of behavior negating the notion that Mr. Rieber just happened to have consumed drugs before the crime. Ruling similar acts evidence inadmissible is a clear failure of the court to follow established federal law set forth in *Chambers v. Mississippi*, 410 U.S. 284 (1973).

used marijuana and crystal meth, and he used acid and cocaine when he could get it. (Doc. 16-83 at 64-65.) Duffy also recalled Mr. Rieber smoking pot and drinking beer on the evening of October 9, 1990. (Doc. 16-83 at 67-68.) Though a close friend of Mr. Rieber's, Duffy was never contacted by any defense attorney even though Mr. Rieber was at her home just before the crime. (Doc. 16-83 at 69-70.)

Sonya Williamson also recalled being at the Duffy party on October 9, 1990. (Doc. 16-83 at 74.) She testified that she saw Mr. Rieber snorting crystal meth, smoking pot, and drinking alcohol that evening. (*Id.* at 73-75.) Like Duffy, Williamson was never contacted by any defense attorney. (*Id.* at 75.)

Shauna Jenkins, Mr. Rieber's sister, also testified that in the days leading up to October 9, 1990, she witnessed Mr. Rieber using marijuana and alcohol nearly every day. (Doc. 16-82 at 140-141.) Several of Mr. Rieber's former friends also testified to his regular drug use. John Walls testified that he saw Mr. Rieber smoke marijuana "all the time" and took LSD on a "pretty constant" basis. (*Id.* at 148-149.) Mr. Walls also indicated that he saw Mr. Rieber snort cocaine more than once per week and take crystal meth at least once per month. (*Id.*

at 149-150.) Beth Piraino testified that she saw Mr. Rieber smoking

marijuana and drinking alcohol and that Mr. Rieber's mother would

smoke marijuana with them. (*Id.* at 165-166, 170.) Charity Hubert

testified that Mr. Rieber frequently smoked marijuana and did cocaine,

crystal meth, and LSD. (*Id.* at 175-176.) Tim Hubert testified that he

saw Mr. Rieber doing crystal meth and frequently saw him use

marijuana. (Doc. 16-83 at 53.)

Dr. Alex Stalcup, an unchallenged expert in the field of drug use

and its effects, also provided testimony at the Rule 32 hearing. First, he

explained how a child starting with marijuana will slowly become less

affected by it, become uncomfortable with mere sobriety, and look for

harder drug alternatives. (Doc. 16-83 at 144-146.) Second, Dr. Stalcup

explained that marijuana can affect a growing brain by retarding

growth of the pre-frontal cortex—the part of the brain that makes

behavioral decisions and acts as a brake on what would otherwise be

destructive behavior. (Doc. 16-83 at 144, 148-150.) Third, other drugs

like LSD can stimulate that part of the brain leading to unregulated

behavior. Dr. Stalcup testified that the result of Mr. Rieber's extensive

drug use is that the part of his brain that triggers unregulated behavior

is stimulated while the part that inhibits unregulated behavior is stunted or impaired. (*Id.*) Dr. Stalcup confirmed that a person consuming the drugs Mr. Rieber consumed just before the convenience store crime very possibly could have a blackout or short circuit, and this would not be an unusual result from such drug consumption. (Doc. 16-83 at 148-151.)

The evidence presented at the Rule 32 hearing demonstrated there were multiple witnesses able to corroborate the Rogers report and prove not only that Mr. Rieber consumed hard drugs just before the crime, but also that this consumption was part of a regular and historical pattern. This evidence supported the voluntary intoxication defense that would have formed the basis for a lesser-included manslaughter charge. Mr. Kempaner, however, did nothing to follow up on Mr. Rieber's drug use or the facts he provided to Dr. Rogers, other than to pursue an alibi defense he knew was doomed. Mr. Moran likewise failed to pursue or present this evidence to Judge Blankenship at the penalty stage or in response to Judge Blankenship's direct question of whether there was any evidence corroborating the Rogers

report. The evidence was there. There was simply no effort by Mr. Kempaner or Mr. Moran to find it.

## C. Standard of Review

This Court is presented with review of the district court's denial of a habeas petition, which it reviews *de novo*. *Gamble v. Sec'y, Fla. Dep't of Corr.*, 450 F.3d 1245, 1247 (11th Cir. 2006). A district court shall grant an application for a writ of habeas corpus if a state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

On appeal, this Court applies *de novo* review to the district court's resolution of questions of law, and of mixed questions of law and fact, including the district court's conclusions "concerning the reasonableness of the state court's application of federal law." *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010). The district court's factual findings are reviewed for clear error. *Melson v. Allen*, 548 F.3d 993, 997 (11th Cir. 2008).

## SUMMARY OF THE ARGUMENT

Mr. Rieber was denied his constitutional right to the effective assistance of counsel at the guilt and penalty phases because his trial counsel failed to adequately investigate and present evidence of his intoxication on the night of the crime and extensive history of drug use.

Mr. Rieber reported to the State's psychologist that he completely blacked out from drug use and had no recollection of the events of October 9, 1990. Despite acknowledgment of Mr. Rieber's incentive to lie, Dr. Rogers concluded in her report that, in her medical judgment, it was more likely Mr. Rieber's memory lapse was due to substance abuse than fabrication.

Mr. Kempaner and Mr. Moran, despite having read the Rogers report, failed to follow up with Mr. Rieber regarding any of the facts reported to Dr. Rogers. Had they done so, they would have found multiple witnesses able to corroborate the Rogers report and prove not only that Mr. Rieber consumed hard drugs just before the crime, but also that this consumption was part of a regular and historical pattern. Their failures resulted in prejudice to Mr. Rieber at both the guilt and penalty phases of trial.

At the guilt phase, to secure a capital conviction, the prosecution had to prove beyond a reasonable doubt that Mr. Rieber possessed the necessary, specific intent to kill. Mr. Rieber's voluntary intoxication on the night of the crime negated this element. Yet, Mr. Kempaner chose to ignore the facts Mr. Rieber reported to Dr. Rogers that would have supported this defense, as well as an instruction on a lesser included offense of manslaughter – a crime not punishable by death. Mr. Kempaner admitted he did not pursue an instruction on a lesser included offense because he incorrectly believed that voluntary intoxication could not be the basis for a lesser included charge, and he did no research to clarify the matter. But for Mr. Kempaner's deficient performance, substantial evidence corroborating Mr. Rieber's intoxication would have been presented which, in turn, would have created reasonable doubt as to Mr. Rieber's intent. There is a reasonable probability, therefore, that Mr. Rieber would not have been convicted of capital murder.

At the penalty phase, Mr. Moran's failure to develop and present mitigating evidence led the trial court to conclude there was no evidence corroborating the Rogers report when, in fact, multiple witnesses were

available to corroborate the Rogers report and establish both that Mr.

Rieber consumed many different drugs during the period just before the

crime, and that he had a lengthy history of drug use. The trial court

explicitly noted the absence of this corroborating evidence in concluding

the aggravating factors outweighed the mitigating factors in overriding

the jury's recommendation of life without parole to impose the death

penalty. But for Mr. Moran's deficient performance, there is a

reasonable probability the judge would have found the aggravating

factors were mitigated and adopted the jury's recommended sentence.

## ARGUMENT

I. **TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT THE GUILT PHASE BY NOT PURSUING A THEORY THAT MR. RIEBER LACKED THE REQUISITE INTENT FOR CAPITAL MURDER.**

   A. **Counsel's failure To Fully Pursue The Viable Alternative Of A Voluntary Intoxication Defense Was Deficient Performance.**

Counsel's performance is constitutionally deficient when it falls

below "an objective standard of reasonableness" considering the

"prevailing professional norms." *Strickland v. Washington*, 466 U.S.

668, 687-88 (1984). Under *Wiggins v. Smith*, 539 U.S. 510, 511 (2003), a

court shows deference to defense counsel's judgment as to which

defenses to rely on at trial, but only if alternate strategies are fully pursued. *See Strickland*, 466 U.S. at 690-91 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.") In addition, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. 263, 274 (2014); *see also Lawhorn v. Allen*, 519 F.3d 1272, 1296 (11th Cir. 2008) (deficient performance found due to counsel's misunderstanding of Alabama law).

Mr. Kempaner's failure to fully investigate the voluntary intoxication defense – and resulting lesser included manslaughter charge – was objectively unreasonable. Mr. Kempaner had a readily available defense to rebut the scienter element of the intentional homicide charge, but he did nothing to pursue this line of defense – other than obtaining the Rogers report, which he then ignored. Dr. Rogers' report indicated that Mr. Rieber said he had no recollection of the events of the evening because of heavy drug consumption in the period before the crime. (Doc. 16-83 at 13; Doc. 16-86 at 130-132.)

Although she appreciated that Mr. Rieber was under an incentive to lie, Dr. Rogers nevertheless found it more likely than not that Mr. Rieber was telling the truth. (Doc. 16-83 at 13; Doc. 16-86 at 130-132.)

Mr. Kempaner read Dr. Rogers' report, including her conclusions. (Doc. 16-83 at 13.) Yet, Mr. Kempaner did nothing to follow up with Mr. Rieber about the facts reported to Dr. Rogers. (Doc. 16-83 at 13-14; Doc. 16-83 at 38-39.) Mr. Kempaner's decision to ignore that Mr. Rieber reportedly blacked out and had no recollection of the events of the evening due to intoxication was not reasonable, especially given that Mr. Kempaner knew an alibi defense would be easily rebutted.

Even 20 years after the crime, there was ample evidence presented at the October, 2011 Rule 32 hearing to corroborate the alternative defense that Mr. Rieber was intoxicated at the time of the crime. Numerous witnesses testified that they had seen Mr. Rieber smoking pot and drinking beer during a party the evening of the crime (Doc. 16-83 at 66-69); snorting crystal meth, smoking some pot, and drinking alcohol at the party (Doc. 16-83 at 73-75); and consuming LSD. (Doc. 16-83 at 96.) The testimony also showed that Mr. Rieber and his friends regularly got together and used crystal meth, LSD, cocaine,

marijuana and alcohol. (Doc. 16-83 at 64-66.) None of this evidence was ever investigated or presented because Mr. Kempaner never even asked Mr. Rieber about the facts relayed to Dr. Rogers.

In addition to Mr. Kempaner's decision to ignore facts reported by his client that supported a voluntary intoxication defense, Mr. Kempaner refused to undertake a basic review of Alabama law to confirm that a voluntary intoxication defense was not only available to Mr. Rieber, but much more likely to succeed than the doomed alibi defense. Mr. Kempaner admitted he did not pursue an instruction on a lesser included offense because he incorrectly believed that voluntary intoxication could not be the basis for a lesser included charge (Doc. 16-83 at 32-33), and he plainly did not research Alabama case law to clarify the matter. Contrary to Mr. Kempaner's belief, Alabama law at the time of the underlying trial was replete with cases requiring that a trial court present a manslaughter charge to the jury in a capital murder case where there is evidence (in many cases, weaker evidence than was available to Mr. Kempaner) that the defendant had consumed drugs or alcohol before the crime. *See Fletcher v. State*, 621 So. 2d 1010 (Ala. Crim. App. 1993); *Owen v. State*, 611 So. 2d 1126, 1127-28 (Ala.

Crim. App. 1992) (eight beers); *Parker v. State*, 587 So. 2d 1072, 1083, 1087 (Ala. Crim. App. 1991) (3 cc's of Talwin), *aff'd*, 610 So. 2d 1181 (Ala. 1992); *Kuenzel v. State*, 577 So. 2d 474, 519, 522 (Ala. Crim. App. 1990) (beer and marijuana), *aff'd*, 577 So. 2d 531 (Ala. 1991); *Silvey v. State*, 485 So. 2d 790 (Ala. Crim. App. 1986). Under *Hinton*, Mr. Kempaner's ignorance and failure to conduct the most basic research is a "quintessential example of unreasonable performance." 571 U.S. at 274.

> **B.**  **Counsel's Deficient Performance Prejudiced Mr. Rieber Because Evidence Of Mr. Rieber's Intoxication Created A Reasonable Doubt As To The Element Of Intent, Which Would Have Resulted In A Conviction On The Lesser Included Offense Of Manslaughter – A Crime Not Punishable By Death.**

A defendant establishes prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Here, the evidence—albeit evidence Mr. Kempaner failed to pursue—supported a voluntary intoxication defense and a jury instruction on the lesser included manslaughter charge. But for Mr.

Kempaner's deficient performance in failing to investigate and present the voluntary intoxication defense, there is a reasonable probability the jury would have found reasonable doubt as to Mr. Rieber's intent to commit murder, the mental state required to support a conviction. If Dr. Rogers, the State's psychologist, believed Mr. Rieber was telling the truth about his drug use and intoxication, then it is likely a jury would also find this evidence credible and find reasonable doubt as to the intent element. The voluntary intoxication defense also neutralized the video and seized evidence that were the core of the prosecution's case. If the jury found reasonable doubt as to *any* element of the crime charged, Mr. Rieber would not have been convicted.

In addition, but for Mr. Kempaner's ignorance of the law and failure to conduct basic research, the jury would have received an instruction on the lesser included offense of manslaughter. At the time of the trial in 1992, the maximum prison sentence for a manslaughter conviction was 20 years – it was not punishable by death. Ala. Code § 13A-5-6(a)(2) (1994). Mr. Kempaner's failure to request this appropriate instruction took a 20-year prison sentence (or less) off the table, leaving Mr. Rieber exposed to the death sentence which Judge Blankenship

ultimately imposed. Even without the evidence Mr. Kempaner failed to

pursue and present, the jury did not recommend the death penalty.

Therefore, had Mr. Kempaner pursued the voluntary intoxication

defense and lesser included instruction it is even more likely the jury

would have found reasonable doubt as to Mr. Rieber's intent and

adopted the lesser included manslaughter charge.

II.     **TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE
        AT THE PENALTY PHASE BY NOT PRESENTING
        MITIGATING EVIDENCE OF MR. RIEBER'S INTOXICATION
        AT THE TIME OF THE OFFENSE.**

        A.     **Counsel's Failure To Adequately Investigate And Present
               Mitigating Evidence Was Deficient Performance.**

        In a capital sentencing proceeding, a defendant must be afforded

the opportunity to provide the sentencer with "individualized

consideration of mitigating factors." *Lockett v. Ohio*, 438 U.S. 586, 606

(1978). Under *Wiggins v. Smith*, a defense lawyer, in preparing the

penalty phase of the case, is required to delve extensively into the

client's background in an effort to obtain mitigating information. 539

U.S. 510, 524-25 (2003). This includes the requirement to interview

family, friends, and other persons familiar with the defendant who

might possess helpful information on sentencing. *Id*. The United States

Supreme Court has consistently held that a capital defendant's counsel

is deficient when they fail "to conduct a thorough investigation of the defendant's background." *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *accord Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U.S. 374, 387–88 (2005).

Mr. Moran's failure to develop and present mitigating evidence at the penalty phase constituted a clear violation of the United States Supreme Court's holding in *Wiggins*. Mr. Moran was appointed to assist Mr. Kempaner in developing and presenting mitigating evidence at the penalty phase. (Doc. 16-85 at 46-47.) Mr. Moran did so in part by proffering the Rogers report, which discusses Mr. Rieber's drug background and in which Dr. Rogers acknowledged that Mr. Rieber was under the influence of drugs at the time of the crime. But this was the sole evidence relied on by Mr. Moran regarding not only Mr. Rieber's drug use just before the crime, but also Mr. Rieber's troublesome family background and extended history of increasingly severe drug use. Having opted to rely on Mr. Rieber's drug use as a mitigating factor, Mr. Moran was obligated to investigate, develop, and present evidence in support of the Rogers report – all of which was available to him. He completely failed to do so.

The prosecution vigorously attacked the Rogers report before the sentencing jury, arguing that by the time of trial, several months after the robbery, Mr. Rieber had time to "invent" his drug use before the crime in an attempt to create mitigating evidence for trial. Mr. Moran had nearly two months to buttress the Rogers report with corroborating evidence, such as that which was available nearly twenty years later at the Rule 32 evidentiary hearing. Instead, Mr. Moran did nothing at all, as evidenced by his time sheets between the date of the jury recommendation and the date of the hearing before Judge Blankenship. (Doc. 16-33 at 6, 8, 10.) This failure was unconstitutionally deficient under *Wiggins*.

### B. Counsel's Deficient Performance Prejudiced Mr. Rieber Because Had Counsel Presented The Mitigating Evidence Available To Him, Mr. Rieber Would Not Have Been Sentenced To Death.

To establish prejudice based on counsel's failure to present mitigating evidence in the sentencing phase of a capital case, a "petitioner must show that, but for counsel's unprofessional errors, there is a reasonable probability that the sentencer would have weighed the balance of aggravating and mitigating factors to find that the circumstances did not warrant the death penalty." *Bush v. Singletary*,

988 F.2d 1082, 1090 (11th Cir. 1993) (citing *Strickland*, 466 U.S. at 694). *See, e.g.*, *Brownlee v. Haley*, 306 F.3d 1043, 1069-71 (11th Cir. 2002) (finding *Strickland* prejudice where counsel did not present "powerful mitigating evidence" of "extensive drug abuse, particularly on the night in question").

Mr. Moran's failure to develop and present mitigating evidence of Mr. Rieber's drug use was prejudicial. The evidence presented at the Rule 32 hearing, and available to Mr. Moran, showed that multiple witnesses were available to corroborate the Rogers report and establish both that Mr. Rieber consumed many different drugs during the period just before the crime, and that he had a lengthy history of drug use. At the Rule 32 hearing, Jo Duffy testified that she remembered Mr. Rieber smoking pot and drinking beer during a party at her house "around dark" on the evening of the crime. (Doc. 16-83 at 66-69.) Other witnesses testified that they saw Mr. Rieber consuming hard drugs at the same party, (Doc. 16-83 at 73-75; Doc. 16-83 at 96), including Sonja Williamson who recalled Mr. Rieber smoking pot and drinking alcohol "that evening." (Doc. 16-83 at 74-75.) The evidence presented demonstrated that Mr. Rieber consumed multiple drugs, including

marijuana, LSD, crystal meth, and alcohol, no earlier than late in the afternoon and likely well into the evening, in close proximity to the time of the crime.

Further, Dr. Alex Stalcup, an unchallenged expert in the field of drug use and its effects, also testified at the Rule 32 hearing that the result of Mr. Rieber's extensive drug use is that the part of his brain that triggers unregulated behavior is stimulated while the part that inhibits unregulated behavior is stunted or impaired. (Doc. 16-83 at 144-146.) Dr. Stalcup confirmed that a person consuming the drugs Mr. Rieber consumed just before the convenience store crime very possibly could have a blackout or short circuit, and this would not be an unusual result from such drug consumption. (Doc. 16-83 at 148-151.)

Had Mr. Moran presented all of this relevant and competent mitigating evidence, the court would have been presented with compelling, corroborating evidence supporting at least two of the statutory mitigating factors in effect at the time of Mr. Rieber's sentencing: (1) that the capital offense was committed while the defendant was under the influence of extreme mental or emotional disturbance, Ala. Code § 13A-5-51(2); and (2) the capacity of the

defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Ala. Code § 13A-5-51(6). Indeed, in the sentencing order, the trial court expressly rejected the Rogers report as it related to these mitigating factors because of a lack of corroborating evidence of Mr. Rieber's intoxication. (Doc. 16-62 at 98.) With respect to the first factor, extreme mental or emotional disturbance, the court concluded:

> "However, there is no evidence before the Court that the defendant was under the influence of drugs and alcohol at the time of the offense and, accordingly, the Court does not accept the view of the forensic examiner that this memory lapse, if it did in fact occur, occurred due to substance abuse."

(Doc. 16-62 at 98.) As to Mr. Rieber's capacity to appreciate the criminality of his conduct, the court concluded that "[t]he only evidence" to support such a finding was the Rogers report and that evidence "is not sufficient for this Court to find that this mitigating circumstance exits." (Doc. 16-62 at 98.) As a result, the trial court rejected both mitigating factors.

On the re-sentencing motion, Mr. Moran once again referred to the Rogers report and Judge Blankenship pressed him as to whether there was *any* evidence corroborating the report. (R. 16-79 at 109-111.)

Mr. Moran's answer was accurate: there was nothing in the record to corroborate the report. (*Id.*) But as the Rule 32 hearing demonstrated, there was a plethora of evidence corroborating the conclusions in Dr. Rogers report. Mr. Moran just failed to develop and present it.

This record makes clear that Mr. Moran's failure to investigate and present mitigating evidence of Mr. Rieber's drug use – evidence that corroborated the Rogers report – made a difference in the outcome of Mr. Rieber's sentence. The court explicitly noted the absence of such evidence in reaching its conclusion that the mitigating circumstances *and* the jury's recommendation of life without parole were outweighed by aggravating circumstances. But for Mr. Moran's failure to develop and present mitigating evidence of Mr. Rieber's drug use, there is a reasonable probability the mitigating evidence would have outweighed the aggravating factors and, as a result, the death penalty would not have been imposed.

## CONCLUSION

For these reasons, Petitioner-Appellant Jeffery Day Rieber respectfully requests that this Court reverse the district court's dismissal of Mr. Rieber's habeas petition.

Respectfully submitted,

By: *s/ James A. Friedman*

James A. Friedman
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: (608) 257-3911
Email: jfriedman@gklaw.com

Emma J. Jewell
GODFREY & KAHN, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Phone: (414) 287-9616
Email: ejewell@gklaw.com

May 13, 2024

*Attorneys for Jeffery Day Rieber*

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of 11th Cir. R. 22-2 and Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the documents exempted by Fed. R. App. P. 32(f), this document contains 6,995 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 365 in 14-point Century.

*s/ James A. Friedman*
James A. Friedman

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on May 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Lauren A. Simpson.  I further certify that I also caused a copy of the foregoing document to be sent by U.S. Mail and Email to Lauren A. Simpson at the following address:

Lauren A. Simpson
Assistant Attorney General
Office of the Attorney General
Capital Litigation Division
501 Washington Ave.
Montgomery, AL 36130
Lauren.Simpson@alabamaag.gov

*s/ James A. Friedman*
James A. Friedman

31023427